

# ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X



U.S. DISTRICT COURT — N.D. OF N.Y.
F I L E D

OCT 25 1999

AT_____ O'CLOCK___JMB
Lawrence K. Baerman, Clerk — Syracuse

ANDREW JONES, STONEHORSE GOEMAN,
Marie Peters, Wealthy Bucktooth, individually and as
guardian ad litem for Holly Lyons and Jordan Bucktooth,
Robert E. Bucktooth, Jr.,Cheryl Bucktooth,
individually and as guardian ad litem for Nadine,
Robert and Garrett Bucktooth, Martha Bucktooth,
Roberta Bucktooth, individually and as guardian ad litem
for Houston Rockwell, Clay Rockwell, Odenhaida
Rockwell, and Abilene Rockwell, Robert Bucktooth
Ronald Jones, Sr., Ronald Jones, Jr., Ruth Jones,
Debby Jones, Karen Jones, Nikki Jones, Karoniakata
Jones, Shawn Jones, Tracy Kappelmeier, individually
and as guardian as litem for Matthew and Adam
Kappelmeier and Gabrielle Misener, Jackie Ashton, Shirley
Snyder,Andrea Potter,Samantha Thompson,
Martha J. Skye, individually and as guardian ad litem for
Cara Skye, Andrew Skye, and Stormy Skye, Steven Lee
Skye,Verna Montour, Sesiley R. Snyder, Alice Thompson,
Minnie Garrow, Frances Dione, Wentawawi Dione,
Joely Vandommelen,  individually and as guardian ad
litem for Daronhiokwas Horn, A'Anase Horn, and
Tekahawakwen Rice, Kahente Horn Miller, individually
and as guardian ad litem for Karonhioko'he Horn,
Kahentinetha Horn, Malcolm Hill, Kathy Melissa Smith,
William Green III, Kevin Henhawk, Dyhyneyyks,
Mona Logan, Gerald Logan, Jr., Anthony Kloch, Jr.,
Kenneth Kappelmeier Frank Bistrovich, Brent Lyons,
Brad Cooke, individually and as guardian ad litem for
Brad Cooke, Jr., Janet Cornelius, Jina Jimerson,
Duane Beckman, Chad Hill, Donna Hill,  Steve Stacy,
Dale Dione, Robin Wanatee, individually and as
guardian ad litem for Joshua Wanatee and Ally
Wanatee, Esther Sundown,  Shelley George, Shiela (Fish)
Ninham, individually and as guardian ad litem for
Sheena Green,  Joe Stefanovich, Tyler Hemlock,
Hayden Hemlock, Skroniati Stacy, Kakwirakeron,
Tekarontake, Teyonienkwataseh, Daniel Moses,
Andrew Moses, Ross John, Holly John, Barry Buckshot,
Juanita (Lewis) Buckshot, individually and as guardian
ad litem for Seth Tarbell, Deirdre M. Tarbell, and
Andrew Buckshot, Kent Papineau, Leighann Neff,

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**SECOND AMENDED
 COMPLAINT**

Jury Trial Requested

98-CV-374 (FJS)(GLS)

and Elaine Horton, as guardian ad litem for Marissa
Horton,                                                          :
                            Plaintiffs,

                                                  :

       -against-

                                                  :

SUPERINTENDENT OF NEW YORK STATE
POLICE JAMES W. MCMAHON, in his                                  :
personal capacity, COUNTY OF ONONDAGA,
ONONDAGA COUNTY SHERIFF'S DEPARTMENT,                            :
ONONDAGA COUNTY SHERIFF KEVIN WALSH,
in his official and personal capacity, and the following         :
persons in their personal capacities as New York State
Troopers, Major James J. Parmley, Captain George                 :
Beach, Inv. Pamela J. Morris, Inv. Dennis J. Blythe,
Inv. John F. Ahern, Sgt. Joseph W. Smith, Trp. Jeffrey           :
D. Sergott, Trp. Michael S. Slade, Trp. James D.
Moynihan, Trp. James K. Jecko, Sgt. Robert                       :
Haumann, Trp. Mark E. Chaffee, Trp. Christopher
J. Clark, Trp. Paul K. Kunzwiler, Trp. Douglas W.                :
Shetler, Trp. Patrick M. DiPirro, Trp. Gregory
Eberl, Sgt. Gary A. Barlow, Trp. Mark E.    Lepczyk,             :
Trp. Martin Zubrzycko, Trp. Glenn Miner, Trp. Gary
Darstein, Trp. Kevin Buttenschon, Sgt. Chris A. Smith,           :
Sgt. Norman Mattice, Capt. John E. Wood, Lt. Thomas
P. Connelly, Inv. Jerry Brown, Sgt. Harry Schleiser,             :
Inv. Norman Ashbarry, Trp. Peter S. Leadley, Trp.
Martin J. Williams, Trp. Gloria L. Wood,  Trp. David             :
G. Bonner, Trp. Dennis J. Burgos, Trp. John P.
Dougherty, Trp. David V. Dye, Trp. Daryl O. Free, Sgt.           :
James J. Greenwood, Trp. Andrew Halinski, Trp. Robert
B. Heath, Trp.Robert H. Hovey, Jr., Trp. Robert A.               :
Jureller, Trp. Stephen P. Kealy, Trp. Troy D. Little,
Trp. Edward J. Marecek, Trp. Ronald G. Morse,                    :
Trp. Paul M. Murray, Trp. Anthony Randazzo,
Trp. Allen Riley, Sgt. Chris A. Smith, Trp. Frederick            :
A. Smith, Sgt. Steven B. Kruth, John Doe 1-100
and Jane Doe 1-100.                     .                        :
                                     Defendants.
-----------------------------------------------------------------------X

## TABLE OF CONTENTS

NATURE OF THE ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

FACTUAL ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
    A.    The May 18, 1997 Gathering . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
    B.    The Implementation of the Indian Detail by Defendants James McMahon,
           James Parmley, George Beach, and Sheriff Kevin Walsh . . . . . . . . . . . . . . . . . 37
    C.    The May 18, 1997 Incident . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
    D.    The False Arrest, Detention and Prosecution of Plaintiffs by the State Police
           Defendants and by the Onondaga County Sheriff's Department . . . . . . . . . . . 43
    E.    Defendants McMahon, Parmley, Beach, Wood, Connelly and Haumann
           Improperly Trained the Indian Detail . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
    F.    Plaintiffs Were Treated Differently From Others Similarly Situated . . . . . . . . 45
    G.    The Role of the Onondaga County Sheriff's
           Department in the May 18, 1997 Incident . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
    H.    The State Police Cover-Up . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
    I.    The State Police Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
    J.    The Notice of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

FACTUAL ALLEGATIONS AS TO EACH DEFENDANT . . . . . . . . . . . . . . . . . . . . . . . . 51
    Superintendent James McMahon . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
    Sheriff Kevin Walsh . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
    Onondaga County/Onondaga County Sheriff's Department . . . . . . . . . . . . . . . . . . . . 54
    Major James Parmley . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
    Captain George Beach . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
    Captain John Wood . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58
    Lieutenant Thomas P. Connelly . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60
    Zone Sergeant Robert Haumann . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62
    Investigator Pamela Morris . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
    Investigator Dennis Blythe . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65
    Investigator John F. Ahern . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66
    Sergeant Joseph Smith . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68
    Trooper Jeffrey D. Sergott . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70
    Trooper Michael Slade . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71
    Trooper James K. Jecko . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73
    Trooper Mark Chaffee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75
    Trooper Christopher J. Clark . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

Trooper Paul Kunzwiler . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78
Trooper Douglas Shetler . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80
Trooper Patrick M. DiPirro . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82
Trooper Gregory Eberl . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83
Sergeant Gary A. Barlow . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85
Trooper Mark E. Lepczyk . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87
Trooper Mark Bender . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88
Trooper Peter Obrist . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 90
Trooper Martin Zubrzycko . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91
Trooper Glenn Miner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93
Trooper Gary Darstein . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94
Trooper Kevin Buttenschon . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 96
Sergeant Chris A. Smith . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 98
Sergeant Norman J. Mattice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 99
Investigator Jerry Brown . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 101
Sergeant Harry Schleiser . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 102
Senior Investigator Norman Ashbarry . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 104
Trooper Peter Leadley . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 105
Trooper Gloria Wood . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 107
Trooper David G. Bonner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109
Trooper Dennis J. Burgos . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 110
Trooper John P. Dougherty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 112
Trooper David V. Dye . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 114
Trooper Daryl O. Free . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 115
Sergeant James J. Greenwood . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 117
Trooper Andrew Halinski . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 118
Trooper Robert B. Heath . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 120
Trooper Ronald H. Hovey, Jr. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 121
Trooper Robert A. Jureller . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 123
Trooper Stephen P. Kealy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 124
Trooper Troy D. Little . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 126
Trooper Edward J. Marecek . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 128
Trooper Ronald G. Morse . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 129
Trooper James D. Moynihan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 131
Trooper Paul M. Murray . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 132
Trooper Anthony W. Randazzo . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 134
Trooper Allen Riley . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 135
Trooper Frederick A. Smith . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 137
Sergeant Steven B. Kruth . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 138

GENERAL ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 140

FIRST CLAIM FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 141

SECOND CLAIM FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 142

THIRD CLAIM FOR RELIEF ............................................. 142

FOURTH CLAIM FOR RELIEF ........................................... 143

FIFTH CLAIM FOR RELIEF ............................................. 145

SIXTH CLAIM FOR RELIEF ............................................. 148

SEVENTH CLAIM FOR RELIEF .......................................... 149

EIGHTH CLAIM FOR RELIEF ........................................... 149

NINTH CLAIM FOR RELIEF ............................................ 150

TENTH CLAIM FOR RELIEF ............................................ 150

ELEVENTH CLAIM FOR RELIEF ......................................... 151

PRAYER FOR RELIEF ................................................. 151

DEMAND FOR A JURY TRIAL ........................................... 152

Plaintiffs, by their attorneys Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., and Hoffmann, Hubert & Hoffmann, LLP, allege the following on the basis of their personal knowledge as to themselves and on information and belief as to all other matters:

## NATURE OF THE ACTION

1.   In this action, Plaintiffs seek money damages for violations of their civil rights under the Constitution of the United States, as well as for a variety of causes of action under the statutes of the United States, and for pendent causes of action under the common law of New York State.  Plaintiffs are almost all Native Americans and members of the Iroquois confederacy (also known as the "Haudenosaunee") who were  involved in a peaceful political, religious, and social gathering on May 18, 1997, near Interstate 81 ("I-81") in Nedrow, New York, on Onondaga Indian Nation territory.  The purpose of the gathering was threefold: to question the legitimacy of certain members of the Council of Chiefs of the Onondaga Nation, to engage in a religious ceremony invoking the guidance of the Great Spirit, and to enjoy a community dinner.  Even though there was no sign that the Plaintiffs intended to engage in violence or breach the peace, and even though the gathering concerned strictly internal matters of the Onondaga Nation and the Iroquois confederacy, over 100 New York State Police ("State Police") troopers and members of the Onondaga County Sheriff's Department ("Sheriff's Department") responded to the scene in order to quash the gathering and silence the Plaintiffs (the "May 18, 1997 incident").  In the course of the May 18, 1997 incident, defendants used force and intimidation to terminate Plaintiffs' gathering and unlawfully arrested many of the Plaintiffs.

2.   The unauthorized arrests, excessive force, and other unlawful conduct engaged in by the defendants were partly motivated by incidents of civil unrest on the Cattaraugus Seneca Indian territory in Bryant, New York.  As a result of those incidents, several hundred troopers were

assigned to a special detail in the Troop D area, which encompasses Syracuse and the Onondaga territory.  The special detail is known as the "Indian detail."  The "Indian detail," which was supervised by defendants James Parmley, George Beach, James Wood, Thomas Connelly, and Robert Haumann, and supervised and approved by Superintendent James W. McMahon, was not sufficiently trained in non-violent crowd control methods, and other non-violent ways to avoid confrontation with the Native Americans, nor was the "Indian detail" sufficiently trained in the use of force and non-violent procedures to be used in effecting arrests.

3.  Moreover, the use of the "Indian detail" to quash the otherwise peaceful gathering near I-81, and the consequent constitutional violations and physical injuries suffered by the Plaintiffs, resulted from the discriminatory animus of defendants Superintendent James McMahon, Major James Parmley, Captains George Beach and James Wood, Onondaga County Sheriff Kevin Walsh and other officials of, respectively the State Police and the Sheriff's Department.  The discriminatory animus of defendants is evidenced by, among other things, (i) the Indian detail's use of violence, excessive force, and intimidation in order to silence the protestors and chill their ability to speak out on issues that concerned them, and (ii) the very implementation of an "Indian detail," the sole purpose of which was to employ military tactics against Native Americans.

4.  On May 18, 1997, at approximately 2:00 p.m., acting on reports that some of the participants in the gathering allegedly had entered onto the northbound lane of the Interstate 81 roadway, the State Police and the Sheriff's Department stopped all traffic on the northbound lane of I-81.  The State Police then proceeded towards the site of the gathering, and assembled on the eastern shoulder of the roadway, facing property belonging to Plaintiff Onondaga Indian Andrew Jones, on which the plaintiffs were gathered.  At the time that the State Police assembled on the shoulder of the

2

highway, none of the Plaintiffs were on I-81, and the people present were gathered on Mr. Jones' property. Without giving any warning to the Plaintiffs, and without giving any explanation or justification for their actions, the State Police trespassed on Mr. Jones' property, moved in on the unarmed Plaintiffs and, with nightsticks drawn, punched, kicked, beat and arrested many Plaintiffs. The arrests were especially brutal, and were carried out with excessive force. In many instances, Native Americans who offered no resistance, including children, the elderly, and infirm individuals, were thrown to the ground and beaten. In all, 24 Native Americans, including 3 children, and one Caucasian were arrested. Several of the arrested Native Americans required medical treatment. Some were treated at local hospitals after their releases one day to several days later.

5. At the time of the arrests, plaintiff Marie Peters, an Akwesasne Mohawk medicine woman, was conducting a sacred fire religious ceremony according to traditional custom. Even though Ms. Peters was conducting the ceremony on private property belonging to Andrew Jones, defendant Sergeant Joseph E. Smith, assisted by defendants Sergeant Mark Atasanoff and Troopers James Jecko and Michael Slade, suddenly and without warning grabbed her arms, knocked over the arbor protecting the sacred fire and pulled her to the ground. Throughout the encounter, Ms. Peters attempted to protect the sacred pipe and eagle feather, which were used in the ceremony. The pipe and feather fell to the ground and these sacred objects were trampled on by defendant State Police officers. Ms. Peters was then arrested and roughly pushed and carried to a waiting police vehicle, causing her to faint. Ms. Peters' arrest ensured that the sacred fire religious ceremony could not be continued. Ms. Peters' assistant in the ceremony, plaintiff Robert E. Bucktooth, Jr. also was brutally beaten and arrested.

3

6.  After defense counsel filed motions to dismiss the charges against the arrested plaintiffs, the charges against almost all of them were either dropped by the Onondaga County District Attorney or dismissed by Justice Philip Miller of Onondaga County Town Court.  In a written decision dismissing the charges against 13 of the plaintiffs, Justice Miller held that, as to most of them, the State Police lacked probable cause to effect the arrests, and the arrests were thus unauthorized.

7.  With respect to the events underlying the claims in this action, Plaintiffs are similarly situated to any New York State residents who engage in a political demonstration and religious gathering.

8.  By implementing and deploying the "Indian detail" in response to the May 18 gathering, defendants have treated the Native American Plaintiffs differently and less favorably than they have treated other New York residents who engage in political demonstrations to which the State Police and Sheriff's Department has responded, in that a group of non-Native American protestors engaged in political demonstrations would not have not been subject to the implementation and deployment of an "Indian detail."  Moreover, had defendants been responding to a gathering of non-Native American protestors, they (i) would not have assumed, as they did  with respect to the Plaintiffs here, that the gathering was intended to be violent, despite the assurances of protestors to the contrary, (ii) would not have taken pains to ensure, as they did  with respect to the Plaintiffs here, that they "outnumbered" the protestors, (iii) would not have instructed members of the Indian detail, as they did here, that it was the practice of the Indians to place their women and children in front of the men when being attacked, and (iv) would have ensured, unlike they did here, that they had

4

working megaphones and other means of being heard by the numerous protestors gathered on Mr. Jones' property.

9.  The defendants' use of excessive force against Plaintiffs, as well as their unlawful actions in quashing the peaceful political, religious and social gathering on May 18, at least in part, were intended as "payback" for an earlier confrontation between the State Police and the Seneca Indians in Bryant, New York.

10.  The implementation of the "Indian detail," and the use of that special detail to quash the otherwise non-violent May 18 political, religious and social gathering, constituted a violation of the Plaintiffs' rights under the Constitution of the United States, specifically, the rights (i) of free speech and assembly, (ii) of freedom of religion, (iii) of due process of law, and (iv) to be secure against unreasonable government searches and seizures.  Moreover, the implementation of the "Indian detail" -- which was designed and intended to disrupt acts of political expression by Native Americans using aggressive riot squad tactics -- constitutes an invidious discriminatory practice against Native Americans on the part of the defendants.

11.  The unlawful police action of May 18, 1997 was proximately caused by the deliberate indifference of, respectively State Police and Sheriff's Department officials, including defendants Superintendent James McMahon, Major James Parmley, Captains George Beach and John Wood, and Sheriff Kevin Walsh, all of whom failed to take steps to ensure that the State Police and Onondaga County Deputy Sheriffs carrying out the response to the gathering were properly trained, even though they knew or should have known of the likelihood that the protestors' civil rights would be violated and that the State Police and Onondaga County Deputy Sheriffs who effected the arrests would use excessive force and engage in other improper conduct unless they were properly trained.

Moreover, after the unlawful police action defendant James McMahon authorized an investigation which concluded that the State Police conducting the May 18, 1997 police action had not been properly trained, but wrongly exonerated the State Police of the charge that they used excessive force during the incident. Although the report purported to be based on an "exhaustive" investigation, none of the Plaintiffs or other participants in the gathering were interviewed and the report contained many factual inaccuracies.

12.   The denial of medical attention to the injured Plaintiffs while they were held in the Onondaga County Justice Center constituted deliberate indifference to their medical needs by the Onondaga County Sheriff's Department, in contravention of the Fifth and Eighth Amendments to the United States Constitution.

13.   Plaintiffs seek compensation for their injuries as well as punitive damages and a declaration that defendants' practices are in violation of, among other things, federal constitutional rights (i) to be safe from unreasonable seizures under the Fourth Amendment, (ii) to equal protection of the laws, and (iii)  to engage in open political expression and freedom of religious worship.

## JURISDICTION AND VENUE

14.   This complaint is brought pursuant to 42 U.S.C. §§ 1983, 1985(3), 1986, 1988, and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. Jurisdiction  is founded on 28 U.S.C. §§ 1331 and 1343(1), (2), (3) and (4).  Supplemental jurisdiction over plaintiffs' claims under New York common law is founded on 28 U.S.C. § 1367(a).

15.   Venue properly lies with this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to the claims occurred in this district.

## PARTIES

### Plaintiffs

16. Plaintiff Andrew Jones is an Onondaga Indian who resides on Onondaga Nation territory. He is the owner of property on which plaintiffs held their political, religious, and social gathering on May 18, 1997. Mr. Jones was prevented by defendants from exercising his First Amendment rights, and was among the Plaintiffs who were unlawfully arrested and wrongfully injured. All charges against him arising from this incident have since been either dismissed or dropped.

17. Plaintiff Stonehorse Goeman is a Tonawanda Seneca Indian who resides on Onondaga Nation territory. He is one of the plaintiffs who were involved in the May 18, 1997 incident. Mr. Goeman was prevented by defendants from exercising his First Amendment rights, and was among the Plaintiffs who were unlawfully arrested. All charges against him arising from this incident have since been either dismissed or dropped.

18. Plaintiff Marie Peters is a Mohawk Indian who resides on Mohawk Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Ms. Peters was prevented by defendants from exercising her First Amendment rights, and was among the Plaintiffs who were unlawfully arrested and wrongfully injured. At the time of her arrest, Ms. Smith, who is a medicine woman, was conducting a "sacred fire" religious ceremony. All charges against her arising from this incident have since been either dismissed or dropped.

19. Plaintiff Wealthy Bucktooth is an Onondaga Indian who resides on Onondaga Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Among

7

other things, Ms. Bucktooth was prevented by defendants from exercising her First Amendment rights.

20.   Plaintiff Holly Lyons is an Onondaga Indian and a minor who resides on Onondaga Nation territory.  She is the daughter of Wealthy Bucktooth, one of the plaintiffs who were involved in the May 18, 1997 incident, and was also present on that day.  Ms. Lyons was prevented by defendants from exercising her First Amendment rights, and was among the Plaintiffs who were unlawfully arrested and wrongfully injured.  All charges against her arising from this incident have since been dropped.

21. Plaintiff Robert E. Bucktooth, Jr. is an Onondaga Indian who resides on Onondaga Nation territory.  He is one of the plaintiffs who were involved in the May 18, 1997 incident.   Mr. Bucktooth was prevented by defendants from exercising his First Amendment rights, and was among the Plaintiffs who were unlawfully arrested and wrongfully injured. All charges  against him arising from this incident have since been either dismissed or dropped.

22.   Plaintiff Cheryl Bucktooth is an Onondaga Indian who resides on Onondaga Nation territory.  She is one of the plaintiffs who were involved in the May 18, 1997 incident.  Ms. Bucktooth was prevented by defendants from exercising her First Amendment rights, and was among the Plaintiffs who were unlawfully arrested and wrongfully injured. All charges against her arising from this incident have since been either dismissed or dropped.

23.   Plaintiff Nadine Bucktooth is an Onondaga Indian and a minor who resides on Onondaga Nation territory.  She is the daughter of Cheryl Bucktooth, one of the plaintiffs who were involved in the May 18, 1997 incident, and was also present on that day.  Among other things, Ms. Bucktooth was prevented by defendants from exercising her First Amendment rights.

8

24.  Plaintiff Robert Bucktooth is an Onondaga Indian and a minor who resides on Onondaga Nation territory.  He is the son of Robert E. and Cheryl Bucktooth and is one of the plaintiffs who were involved in the May 18, 1997 incident.  Among other things, Mr. Bucktooth was prevented by defendants from exercising his First Amendment rights.

25.  Plaintiff Garrett Bucktooth is an Onondaga Indian who resides on Onondaga Nation territory.  He is the son of Robert E. and Cheryl Bucktooth and is one of the plaintiffs who were involved in the May 18, 1997 incident.  Among other things, Mr. Bucktooth was prevented by defendants from exercising his First Amendment rights.

26.  Plaintiff Martha Bucktooth is an Onondaga Indian who resides on Onondaga Nation territory.  She is one of the plaintiffs who were involved in the May 18, 1997 incident.  Among other things, Ms. Bucktooth was prevented by defendants from exercising her First Amendment rights.

27.  Plaintiff Roberta Bucktooth is an Onondaga Indian who resides on Onondaga Nation territory.  She is one of the plaintiffs who were involved in the May 18, 1997 incident, Among other things, Ms. Bucktooth was prevented by defendants from exercising her First Amendment rights.

28.  Plaintiff Jordan Bucktooth is an Onondaga Indian and a minor who resides on Onondaga Nation territory.  She is the daughter of Wealthy Bucktooth, one of the plaintiffs who were involved in the May 18, 1997 incident, and was also present on that day.  Among other things, Ms. Bucktooth was prevented by defendants from exercising her First Amendment rights.

9

29. Plaintiff Rob Bucktooth is an Onondaga Indian who resides on Onondaga Nation territory. He is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Mr. Bucktooth was prevented by defendants from exercising his First Amendment rights.

30. Plaintiff Clay Rockwell is an Onondaga Indian and a minor who resides on Onondaga Nation territory. He is the son of Roberta Bucktooth, one of the plaintiffs who were involved in the May 18, 1997 incident, and was also present on that day. Among other things, Mr. Rockwell was prevented by defendants from exercising his First Amendment rights.

31. Plaintiff Abilene Rockwell is an Onondaga Indian and a minor who resides on Onondaga Nation territory. She is the daughter of Roberta Bucktooth, one of the plaintiffs who were involved in the May 18, 1997 incident, and was also present on that day. Among other things, Ms. Rockwell was prevented by defendants from exercising her First Amendment rights.

32. Plaintiff Houston Rockwell is an Onondaga Indian and a minor who resides on Onondaga Nation territory. He is the son of Roberta Bucktooth, one of the plaintiffs who were involved in the May 18, 1997 incident, and was also present on that day. Among other things, Mr. Rockwell was prevented by defendants from exercising his First Amendment rights.

33. Plaintiff Odenhaida Rockwell is an Onondaga Indian and a minor who resides on Onondaga Nation territory. She is the daughter of Roberta Bucktooth, one of the plaintiffs who were involved in the May 18, 1997 incident, and was also present on that day. Plaintiff Odenhaida Rockwell was, at the time of the incident, approximately two years old, and was in a full body cast. In the melee, state police troopers knocked Onenhaida out of her stroller, placing her in great risk of serious physical harm.

10

34.  Plaintiff Ronald Jones, Sr. is an Onondaga Indian who resides on Onondaga Nation territory. He is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Mr. Jones was prevented by defendants from exercising his First Amendment rights.

35.  Plaintiff Ronald Jones, Jr. is an Onondaga Indian who resides on Onondaga Nation territory. He is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Mr. Jones was prevented by defendants from exercising his First Amendment rights.

36.  Plaintiff Ruth Jones is an Onondaga Indian who resides on Onondaga Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Ms. Jones was prevented by defendants from exercising her First Amendment rights.

37. Plaintiff Debbie Jones is an Onondaga Indian who resides on Onondaga Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Ms. Jones was prevented by defendants from exercising her First Amendment rights.

38.  Plaintiff Karen Jones is an Onondaga Indian who resides on Onondaga Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Ms. Jones was prevented by defendants from exercising her First Amendment rights.

39.  Plaintiff Nikki Jones is an Onondaga Indian who resides on Onondaga Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Ms. Jones was prevented by defendants from exercising her First Amendment rights.

40.  Plaintiff Karoniakata Jones is an Onondaga Indian who resides on Onondaga Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Ms. Jones was prevented by defendants from exercising her First Amendment rights.

11

41.  Plaintiff Shawn P. Jones is an Onondaga Indian who resides on Onondaga Nation territory.  He is one of the plaintiffs who were involved in the May 18, 1997 incident.  Among other things, Mr. Jones was prevented by defendants from exercising his First Amendment rights.

42.  Plaintiff Tracey Kappelmeier is an Onondaga Indian who resides on Onondaga Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident.  Among other things, Ms. Kappelmeier was prevented by defendants from exercising her First Amendment rights.

43.  Plaintiff Adam Kappelmeier is an Onondaga Indian and a minor who resides on Onondaga Nation territory.  He is the son of Kenneth and Tracy Kappelmeier, both plaintiffs who were involved in the May 18, 1997 incident, and was also present on that day.  Among other things, Mr. Kappelmeier was prevented by defendants from exercising his First Amendment rights.

44. Plaintiff Matthew Kappelmeier is an Onondaga Indian and a minor who resides on Onondaga Nation territory.  He is the son of Kenneth and Tracy Kappelmeier, both plaintiffs who were involved in the May 18, 1997 incident, and was also present on that day.  Among other things, Mr. Kappelmeier was prevented by defendants from exercising his First Amendment rights.

45.    Plaintiff Gabrielle Misener is an Onondaga Indian and a minor who resides on Onondaga Nation territory.  She is the daughter of Tracy Kappelmeier, a plaintiff who was involved in the May 18, 1997 incident, and was also present on that day.  Among other things, Ms. Misener was prevented by defendants from exercising his First Amendment rights.

46.  Plaintiff Jacqueline Ashton is a resident of New York and a citizen of the United States.  She is a Caucasian and is one of the plaintiffs who were involved in the May 18, 1997

12

incident. Among other things, Ms. Ashton was prevented by defendants from exercising her First Amendment rights.

47. Plaintiff Shirley Snyder is a Tonawanda Seneca Indian who resides on Tonawanda Seneca Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Ms. Snyder was prevented by defendants from exercising her First Amendment rights.

48. Plaintiff Andrea Potter is a Tonawanda Seneca Indian who resides in Rochester, New York. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Ms. Potter was prevented by defendants from exercising her First Amendment rights, and was among the Plaintiffs who were unlawfully arrested and wrongfully injured. All charges against her arising from this incident have since been either dismissed or dropped.

49. Plaintiff Samantha Thompson is a Mohawk Indian who resides on Mohawk Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Ms. Thompson was prevented by defendants from exercising her First Amendment rights, and was among the Plaintiffs who were unlawfully arrested and wrongfully injured. All charges against her arising from this incident have since been either dismissed or dropped.

50. Plaintiff Martha Skye is a Seneca Indian who resides on Seneca Nation Allegheny territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Ms. Skye was prevented by defendants from exercising her First Amendment rights, and was among the Plaintiffs who were unlawfully arrested and wrongfully injured. All charges against her arising from this incident have since been either dismissed or dropped.

13

51.  Plaintiff Steven Lee Skye is a Seneca Indian who resides on Seneca Nation Allegheny territory.  He is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Mr. Skye was prevented by defendants from exercising his First Amendment rights.

52.  Plaintiff Cora Lee Skye is a Seneca Indian and a minor who resides on Seneca Allegheny Nation territory.  She is the daughter of Martha and Steven Lee Skye, plaintiffs who was involved in the May 18, 1997 incident, and was also present on that day.  Among other things, Ms. Skye was prevented by defendants from exercising her First Amendment rights.

53.  Plaintiff Andrew Curtis Skye is a Seneca Indian and a minor who resides on Seneca Nation territory.  He is the son of Steven Lee and Martha Skye, plaintiffs who was involved in the May 18, 1997 incident, and was also present on that day.  Among other things, Mr. Skye was prevented by defendants from exercising his First Amendment rights.

54.  Plaintiff Stormey Skye is a Seneca Indian and a minor who resides on Seneca Nation territory.  He is the son of Steven Lee and Martha Skye, a plaintiffs who was involved in the May 18, 1997 incident, and was also present on that day.  Among other things, Mr. Skye was prevented by defendants from exercising his First Amendment rights.

55.  Plaintiff Verna Montour is a Seneca Indian who resides on Mohawk Nation territory.  She is one of the plaintiffs who were involved in the May 18, 1997 incident.  Ms. Montour was prevented by defendants from exercising her First Amendment rights, and was among the Plaintiffs who were unlawfully arrested and wrongfully injured.  All charges against her arising from this incident have since been either dismissed or dropped.

14

56.  Plaintiff Sesiley R. Snyder is a minor and a Tonawanda Seneca Indian who resides on Tonawanda Seneca Nation territory.  She is one of the plaintiffs who were involved in the May 18, 1997 incident.  Ms. Snyder was prevented by defendants from exercising her First Amendment rights, and was among the Plaintiffs who were unlawfully arrested and wrongfully injured. All charges against her arising from this incident have since been either dismissed or dropped.

57. Plaintiff Alice Thompson is an Onondaga Indian who resides on Onondaga Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident.  Among other things, Ms. Thompson was prevented by defendants from exercising her First Amendment rights.

58.  Plaintiff Minnie Garrow is a Mohawk Indian who resides on Mohawk Nation territory.  She is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Ms. Garrow was prevented by defendants from exercising her First Amendment rights.

59.  Plaintiff Frances Dione is a Mohawk Indian who resides on Mohawk Nation territory.  She is one of the plaintiffs who were involved in the May 18, 1997 incident.  Among other things, Ms. Dione was prevented by defendants from exercising her First Amendment rights.

60.  Plaintiff Dale Dione is a Mohawk Indian who resides on Mohawk Nation territory.  She is one of the plaintiffs who were involved in the May 18, 1997 incident.  Among other things, Ms. Dione was prevented by defendants from exercising her First Amendment rights.

61.  Plaintiff Wentawawi Dione is a Mohawk Indian and a minor who resides on Mohawk Nation territory.  She is the daughter of Dale Dione, a plaintiffs who was involved in the May 18, 1997 incident, and was also present on that day.  Among other things, Ms. Dione was prevented by defendants from exercising her First Amendment rights.

15

62. Plaintiff Jolely VanDommelen is a Mohawk Indian who resides on Mohawk Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Ms. VanDommelen was prevented by defendants from exercising her First Amendment rights.

63. Plaintiff Daronhiokwas Horn is a Mohawk Indian and a minor who resides on Mohawk Nation territory. She was also present at the May 18, 1997 incident. Among other things, Ms. Horn was prevented by defendants from exercising her First Amendment rights.

64. Plaintiff A'Anase Horn is a Mohawk Indian and a minor who resides on Mohawk Nation territory. He is the son of Joely Vandommelen was also present at the May 18, 1997 incident. Among other things, Ms. Horn was prevented by defendants from exercising her First Amendment rights.

65. Plaintiff Tekawakwen Rice is a Mohawk Indian and a minor who resides on Mohawk Nation territory. He is the son of Joely Vandommelen and was also present at the May 18, 1997 incident. Among other things, Ms. Rice was prevented by defendants from exercising her First Amendment rights.

66. Plaintiff Kahente Horn-Miller is a Mohawk Indian who resides on Mohawk Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Ms. Horn-Miller was prevented by defendants from exercising her First Amendment rights.

67. Plaintiff Kahentinetha Horn is a Mohawk Indian who resides on Mohawk Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Ms. Horn was prevented by defendants from exercising her First Amendment rights.

16

68. Plaintiff Karonhioka'he Horn is a Mohawk Indian and a minor who resides on Mohawk Nation territory. He is the son of plaintiff Kahente Horn-Miller and was also present at the May 18, 1997 incident. Among other things, Mr. Horn was prevented by defendants from exercising his First Amendment rights.

69. Plaintiff Malcolm Hill is a Tonawanda Seneca Indian who resides on Tonawanda Seneca Nation territory. He is one of the plaintiffs who were involved in the May 18, 1997 incident. Mr. Hill was prevented by defendants from exercising his First Amendment rights, and was among the Plaintiffs who were unlawfully arrested and wrongfully injured. All charges against him arising from this incident have since been either dismissed or dropped.

70. Plaintiff Kathy Melissa Smith is a Tonawanda Seneca Indian who resides on Tonawanda Seneca Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Ms. Smith was prevented by defendants from exercising his First Amendment rights, and was among the Plaintiffs who were unlawfully arrested and wrongfully injured. All charges against her arising from this incident have since been either dismissed or dropped.

71. Plaintiff William Green, III is an Onondaga Indian who resides on Onondaga Nation territory. He is one of the plaintiffs who were involved in the May 18, 1997 incident. Mr. Green was prevented by defendants from exercising his First Amendment rights, and was among the Plaintiffs who were unlawfully arrested and wrongfully injured. All charges against him arising from this incident have since been either dismissed or dropped.

72. Plaintiff Kevin Henhawk is an Onondaga Indian who resides on Onondaga Nation territory. He is one of the plaintiffs who were involved in the May 18, 1997 incident. Mr. Henhawk was prevented by defendants from exercising his First Amendment rights, and was among the

17

Plaintiffs who were unlawfully arrested and wrongfully injured. All charges against him arising from this incident have since been either dismissed or dropped.

73.   Plaintiff Dehyneyyks (Alfred Logan) is an Onondaga Indian who resides on Onondaga Nation territory.  He is one of the plaintiffs who were involved in the May 18, 1997 incident. Dehyneyyuks was prevented by defendants from exercising his First Amendment rights, and was among the Plaintiffs who were unlawfully arrested and wrongfully injured.  All charges against him arising from this incident have since been either dismissed or dropped.

74.  Plaintiff Mona Logan is a Tonawanda Seneca Indian who resides on Tonawanda Seneca Nation territory.  She is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Ms. Logan was prevented by defendants from exercising her First Amendment rights.

75.  Plaintiff Gerald Logan, Jr. is a Tonawanda Seneca Indian and a minor who resides on Tonawanda Seneca Nation territory.  He was also present at the May 18, 1997 incident.  Among other things, Mr. Logan was prevented by defendants from exercising his First Amendment rights.

76.  Plaintiff Anthony Kloch, Jr. is a resident of the State of New York and a citizen of the  United States.  He is a Caucasian and is one of the plaintiffs who were involved in the May 18, 1997 incident.  Mr. Kloch was prevented by defendants from exercising his First Amendment rights, and was among the Plaintiffs who were unlawfully arrested and wrongfully injured. All charges against him arising from this incident have since been either dismissed or dropped.

77.  Plaintiff Kenneth A. Kappelmeier is an Akwesanse Mohawk Indian, and resides on Onondaga Nation territory.  He is one of the plaintiffs who were involved in the May 18, 1997 incident.  Mr. Kappelmeier was prevented by defendants from exercising his First Amendment rights,

and was among the Plaintiffs who were unlawfully arrested and wrongfully injured. After a trial, Mr. Kappelmeier was acquitted of all of the charges against him arising from the May 18, 1997 incident.

78. Plaintiff Frank Bistrovich is a Mohawk Indian who resides in Nedrow, New York. He is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Mr. Bistrovich was prevented by defendants from exercising his First Amendment rights.

79. Plaintiff Brent Lyons is an Onondaga Indian who resides on Onondaga Nation territory. He is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Mr. Lyons was prevented by defendants from exercising his First Amendment rights.

80. Plaintiff Brad Cooke is an Oneida Indian who resides in the city of Syracuse, New York. He is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Mr. Cooke was prevented by defendants from exercising his First Amendment rights.

81. Plaintiff Brad Cooke, Jr. is an Oneida Indian who resides in the city of Syracuse, New York. He is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Mr. Cooke was prevented by defendants from exercising his First Amendment rights.

82. Plaintiff Janet Cornelius is an Onondaga Indian who resides on Onondaga Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Ms. Cornelius was prevented by defendants from exercising her First Amendment rights.

83. Plaintiff Jina Jimerson is an Onondaga Indian who resides on Onondaga Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Ms. Jimerson was prevented by defendants from exercising her First Amendment rights.

84. Plaintiff Duane Beckman is an Onondaga Indian who resides on Onondaga Nation territory. He is one of the plaintiffs who were involved in the May 18, 1997 incident. Mr. Beckman

was prevented by defendants from exercising his First Amendment rights, and was among the Plaintiffs who were unlawfully arrested and wrongfully injured. All charges against him arising from this incident have since been either dismissed or dropped.

85. Plaintiff Chad Hill is an Onondaga Indian and a minor who resides on Onondaga Nation territory. He is the son of plaintiff Martha Bucktooth and is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Mr. Hill was prevented by defendants from exercising his First Amendment rights.

86. Plaintiff Donna Hill is an Onondaga Indian and a minor who resides on Onondaga Nation territory. She is the daughter of Martha Bucktooth and is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Ms. Hill was prevented by defendants from exercising her First Amendment rights.

87. Plaintiff Robin Wanatee is an Onondaga Indian who resides on Onondaga Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Ms. Wanatee was prevented by defendants from exercising her First Amendment rights.

88. Plaintiff Esther Sundown is an Onondaga Indian who resides on Tonawanda Seneca Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Ms. Sundown was prevented by defendants from exercising her First Amendment rights.

89. Plaintiff Shelley George is an Onondaga Indian who resides on Onondaga Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Ms. George was prevented by defendants from exercising her First Amendment rights.

20

90. Plaintiff Sheena Green is an Onondaga Indian who resides on Onondaga Nation territory. She is the daughter of plaintiff Sheena Ninham and was one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Ms. Green was prevented by defendants from exercising her First Amendment rights.

91. Plaintiff Sheila Ninham is an Onondaga Indian who resides on Onondaga Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Ms. Fish was prevented by defendants from exercising her First Amendment rights.

92. Plaintiff Joe Stefanovich is a resident of New York and a citizen of the United States. He is a Caucasian and is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Mr. Stefanovich was prevented by defendants from exercising his First Amendment rights.

93. Plaintiff Skroniati Stacey is a Mohawk Indian who resides on Mohawk Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Ms. Stacey was prevented by defendants from exercising her First Amendment rights.

94. Plaintiff Tyler Hemlock is a Mohawk Indian who resides on Mohawk Nation territory. He is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Mr. Hemlock was prevented by defendants from exercising his First Amendment rights.

95. Plaintiff Hayden Hemlock is a Mohawk Indian who resides on Mohawk Nation territory. He is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Mr. Hemlock was prevented by defendants from exercising his First Amendment rights.

96. Plaintiff Kakwirakeron (Art Montour) is a Mohawk Indian who resides on Mohawk Nation territory. He is one of the plaintiffs who were involved in the May 18, 1997

21

incident. Kakwirakeron was prevented by defendants from exercising his First Amendment rights, and was among the Plaintiffs who were unlawfully arrested and wrongfully injured. All charges against him arising from this incident have since been either dismissed or dropped.

97. Plaintiff Tekarontke (Paul Delaronde) is a Mohawk Indian who resides on Mohawk Nation territory. He is one of the plaintiffs who were involved in the May 18, 1997 incident. Tekarontke was prevented by defendants from exercising his First Amendment rights, and was among the Plaintiffs who were unlawfully arrested and wrongfully injured. All charges against him arising from this incident have since been either dismissed or dropped.

98. Plaintiff Teyonienkwateseh (Art Montour, Jr.) is a Mohawk Indian who resides on Mohawk Nation territory. He is one of the plaintiffs who were involved in the May 18, 1997 incident. Teyonienkwateseh was prevented by defendants from exercising his First Amendment rights, and was among the Plaintiffs who were unlawfully arrested and wrongfully injured. All charges against him arising from this incident have since been either dismissed or dropped.

99. Plaintiff Daniel Moses is a Native American who resides in Nedrow, New York. He is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Mr. Moses was prevented by defendants from exercising his First Amendment rights.

100. Plaintiff Andrew Moses is a Native American who resides in Nedrow, New York. He is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Mr. Moses was prevented by defendants from exercising his First Amendment rights.

101. Plaintiff Ross John is a Seneca Indian who resides on Seneca Nation territory. He is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Mr. John was prevented by defendants from exercising his First Amendment rights.

22

102. Plaintiff Holly John is a Seneca Indian who resides on Seneca Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Ms. John was prevented by defendants from exercising her First Amendment rights.

103. Plaintiff Juanita Buckshot is a Potawotomi Indian who resides on Onondaga Nation territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Ms. Buckshot was prevented by defendants from exercising her First Amendment rights.

104. Plaintiff Barry Buckshot is an Oneida Indian who resides on Onondaga Nation territory. He is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Mr. Buckshot was prevented by defendants from exercising his First Amendment rights.

105. Plaintiff Seth Tarbell is a Potawotomi Indian who resides on Onondaga Nation territory. He is the son of plaintiff Juanita Buckshot and is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Mr. Tarbell was prevented by defendants from exercising his First Amendment rights.

106. Plaintiff Deirdre M. Tarbell is a Potawotomi Indian who resides on Onondaga Nation territory. She is the daughter of Juanita Buckshot and is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Ms. Tarbell was prevented by defendants from exercising her First Amendment rights.

107. Plaintiff Andrew Buckshot is a Potawotomi Indian who resides on Onondaga Nation territory. He is the son of Juanita Buckshot and is one of the plaintiffs who were involved in the May 18, 1997 incident. Among other things, Mr. Buckshot was prevented by defendants from exercising his First Amendment rights.

23

108.   Plaintiff Kent Papineau is an Onondaga Indian who resides on Onondaga Nation territory.  He is one of the plaintiffs who were involved in the May 18, 1997 incident.   Among other things, Mr. Papineau was prevented by defendants from exercising his First Amendment rights.

109.   Plaintiff Marissa Horton, who is sixteen years old, is a Caucasian and a resident of Syracuse, New York.  She is one of the plaintiffs who were involved in the May 18, 1997 incident.  Ms. Horton was prevented by defendants from exercising his First Amendment rights, and was among the Plaintiffs who were unlawfully arrested and wrongfully injured. Plaintiff Horton was sitting in a car that belonged to plaintiff Sheila Ninham, which car was parked in Andrew Jones' driveway, when she was accosted by a state trooper, who removed her  from the vehicle using physical force and pulled her away, crying and scared, from the vehicle, placing her under arrest.  Plaintiff Horton was thirteen years old at the time of the incident. All charges against her arising from this incident have since been either dismissed or dropped.  Elaine Horton, Ms. Horton's mother, appears on her behalf in this action as her guardian ad litem.

110.   Plaintiff Leighann Neff is a Seneca Indian who resides on Mohawk  territory. She is one of the plaintiffs who were involved in the May 18, 1997 incident.  Ms. Neff was prevented by defendants from exercising his First Amendment rights, and was among the Plaintiffs who were unlawfully arrested and wrongfully injured. All charges against her arising from this incident have since been either dismissed or dropped.

## Defendants

111.  Plaintiffs have identified some of the defendant State Police involved in and responsible for the May 18, 1997 incident from the criminal complaints filed against the Native

24

Americans arrested on that day, as well as from memoranda written by State Police troopers that were offered by the Onondaga County District Attorney to provide support for charges against the arrested Plaintiffs. However, the listing of defendants involved in the May 18, 1997 incident is not exhaustive, and Plaintiffs expect to supplement the list with the names of other defendants as they become known.

112. Defendant County of Onondaga is, and at all times relevant hereto was, a political subdivision of the State of New York. Onondaga County is a distinct political entity that has its own budget. Plaintiffs are informed and believe and thereon allege that defendant Onondaga County (i) knowingly assisted the State Police in effecting its unlawful action on May 18, 1997, and (ii) was deliberately indifferent in failing to ensure that the county employees who took part in the unlawful police action were adequately trained.

113. Defendant Onondaga County Sheriff's Department is, and at all times relevant hereto was, a division of Onondaga County.

114. Defendant James W. McMahon is, and at all times relevant hereto was, the Superintendent of the New York State Police Department, responsible for directing the operations and establishing the practices and policies of the New York State Police Department. Plaintiffs are informed and believe and thereon allege that Defendant McMahon (i) authorized and/or ratified the creation of the "Indian detail" and the unlawful police action on May 18, 1997, (ii) authorized the New York State Police to undertake the police action on May 18, 1997 that led to plaintiffs' injuries, (iii) was deliberately indifferent in failing to ensure that the state troopers who took part in the unlawful police action were adequately trained, and (iv) directed the subsequent internal investigation

25

that served to cover up the state police's unlawful actions on May 18, 1997. Mr. McMahon is one of the supervising defendants.

115. Defendant Kevin Walsh is, and at all times relevant hereto was, the Sheriff of Onondaga County. As Sheriff, Mr. Walsh is responsible for directing the operations and establishing the practices and policies of the Sheriff's Department. Plaintiffs also are informed and believe that Defendant Walsh (i) authorized the Onondaga County Sheriff's Department to undertake the police action on May 18, 1997 that led to Plaintiffs' injuries, (ii) was personally involved in the planning and preparation of the unlawful police action, (iii) did not properly train Sheriff's Department employees to deal with Plaintiffs' injuries, and (iv) deliberately ignored Plaintiffs' injuries and medical injuries. Mr. Walsh is one of the supervising defendants.

116. Defendant James J. Parmley is, and all times relevant hereto was, a major employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon. Upon information and belief, defendant Parmley personally participated in the unlawful police action on May 18, 1997. Major Parmley was directly responsible for (i) ordering the State Police to use excessive force and intimidation in order to silence Plaintiffs, (ii) interfering with Plaintiffs' exercise of free speech and freedom of religion, and (iii) participating in the cover-up of State Police misconduct during the May 18, 1997 incident. Mr. Parmley is one of the supervising defendants.

117. Defendant Captain George Beach is, and at all times relevant hereto was, a captain employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon. Upon information and belief, defendant

26

Beach personally participated in the unlawful police action on May 18, 1997.  Mr. Beach is one of the supervising defendants.

118.  Defendant Captain John E. Wood is, and at all times relevant hereto was, a captain employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.  Upon information and belief, defendant Wood personally participated in the unlawful police action on May 18, 1997.  Mr. Wood is one of the supervising defendants.

119.  Defendant Thomas P. Connelly is, and at all times relevant hereto was,  a lieutenant employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon. Upon information and belief, defendant Connelly personally participated in the unlawful police action on May 18, 1997.  Defendant Connelly is one of the supervising defendants.

120.  Defendant Zone Sergeant Robert Haumann  is, and at all times relevant hereto was, a sergeant employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.  Upon information and belief, defendant Haumann personally participated in the unlawful police action on May 18, 1997. Defendant Haumann is one of the supervising defendants.

121.  Defendant Pamela J. Morris is, and at all times relevant hereto was, an investigator employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.  Upon information and belief, defendant Morris personally participated in the unlawful police action on May 18, 1997.

27

122. Defendant Dennis J. Blythe is, and at all times relevant hereto was, an investigator employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon. Upon information and belief, defendant Blythe personally participated in the unlawful police action on May 18, 1997.

123. Defendant John F. Ahern is, and at all times relevant hereto was, an investigator employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon. Upon information and belief, defendant Ahern personally participated in the unlawful police action on May 18, 1997.

124. Defendant Joseph W. Smith is, and at all times relevant hereto was, a sergeant employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon. Upon information and belief, defendant Smith personally participated in the unlawful police action on May 18, 1997.

125. Defendant Jeffrey D. Sergott is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon. Upon information and belief, defendant Sergott personally participated in the unlawful police action on May 18, 1997.

126. Defendant Michael S. Slade is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon. Upon information and belief, defendant Slade personally participated in the unlawful police action on May 18, 1997.

127. Defendant James D. Moynihan is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction

28

of defendant Superintendent James McMahon.   Upon information and belief, defendant Slade personally participated in the unlawful police action on May 18, 1997.

128.  Defendant James K. Jecko is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.   Upon information and belief, defendant Jecko personally participated in the unlawful police action on May 18, 1997.

129.  Defendant Mark E. Chafee is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.   Upon information and belief, defendant Chafee personally participated in the unlawful police action on May 18, 1997.

130.  Defendant Christopher J. Clark is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.   Upon information and belief, defendant Clark personally participated in the unlawful police action on May 18, 1997.

131.  Defendant Paul K. Kunzwiler is, and at all times relevant hereto was,  a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.   Upon information and belief, defendant Kunzwiler personally participated in the unlawful police action on May 18, 1997.

132.  Defendant Douglas W. Shetler is, and at all times relevant hereto was,  a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.   Upon information and belief, defendant Shetler personally participated in the unlawful police action on May 18, 1997.

29

133. Defendant Patrick M. DiPirro is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon. On information and belief, defendant DiPirro personally participated in the unlawful police action on May 18, 1997.

134. Defendant Gregory Eberl is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon. Upon information and belief, defendant Eberl personally participated in the unlawful police action on May 18, 1997.

135. Defendant Gary A. Barlow is, and at all times relevant hereto was, a sergeant employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon. Upon information and belief, defendant Barlow personally participated in the unlawful police action on May 18, 1997.

136. Defendant Mark E. Lepczyk is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon. Upon information and belief, defendant Lepczyk personally participated in the unlawful police action on May 18, 1997.

137. Defendant Mark Bender is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon. Upon information and belief, defendant Bender personally participated in the unlawful police action on May 18, 1997.

138. Defendant Peter Obrist  is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction

30

of defendant Superintendent James McMahon.  Upon information and belief, defendant Obrist personally participated in the unlawful police action on May 18, 1997.

139.  Defendant Martin Zubrzycko is, and at all times relevant hereto was,  a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.  Upon information and belief, defendant Zubrzycko personally participated in the unlawful police action on May 18, 1997.

140.  Defendant Glenn Miner is, and at all times relevant hereto was,  a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.  Upon information and belief, defendant Minor personally participated in the unlawful police action on May 18, 1997.

141.  Defendant Gary Darstein is, and at all times relevant hereto was,  a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon. Upon information and belief, defendant Darstein personally participated in the unlawful police action on May 18, 1997.

142.  Defendant Kevin Buttenschon, at all times relevant hereto, was a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.  Upon information and belief, defendant Buttenschon personally participated in the unlawful police action on May 18, 1997.

143.  Defendant Chris A. Smith is, and at all times relevant hereto was, a sergeant employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.  Upon information and belief, defendant Smith personally participated in the unlawful police action on May 18, 1997.

31

144.  Defendant Sergeant Norman J. Mattice is, and at all times relevant hereto was, a sergeant employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.  Upon information and belief, defendant Mattice personally participated in the unlawful police action on May 18, 1997.

145.  Defendant Jerry Brown is, and at all times relevant hereto was, an investigator employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.  Upon information and belief, defendant Brown personally participated in the unlawful police action on May 18, 1997.

146.  Defendant Harry Schleiser is, and at all times relevant hereto was, a sergeant employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.  Upon information and belief, defendant Schleiser personally participated in the unlawful police action on May 18, 1997.

147.  Defendant Norman Ashbarry is, and at all times relevant hereto was,  an investigator employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.  Upon information and belief, defendant Ashbarry personally participated in the unlawful police action on May 18, 1997.

148.  Defendant Peter Leadley is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.  Upon information and belief, defendant Leadley personally participated in the unlawful police action on May 18, 1997.

149.  Defendant Gloria L. Wood is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction

32

of defendant Superintendent James McMahon.  Upon information and belief, defendant Wood personally participated in the unlawful police action on May 18, 1997.

150.  Defendant David G. Bonner is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.  Upon information and belief, defendant Bonner personally participated in the unlawful police action on May 18, 1997.

151.  Defendant Dennis J. Burgos is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.  Upon information and belief, defendant Burgos personally participated in the unlawful police action on May 18, 1997.

152.  Defendant John P. Dougherty is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.  Upon information and belief, defendant Dougherty personally participated in the unlawful police action on May 18, 1997.

153.  Defendant David V. Dye is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.  Upon information and belief, defendant  Dye personally participated in the unlawful police action on May 18, 1997.

154. Defendant Daryl O. Free is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.  Upon information and belief, defendant Free personally participated in the unlawful police action on May 18, 1997.

155.   Defendant James J. Greenwood is, and at all times relevant hereto was, a sergeant employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.   Upon information and belief, defendant Greenwood personally participated in the unlawful police action on May 18, 1997.

156.   Defendant Andrew Halinski is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.   Upon information and belief, defendant Halinski personally participated in the unlawful police action on May 18, 1997.

157.   Defendant Robert B. Heath is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.   Upon information and belief, defendant Heath personally participated in the unlawful police action on May 18, 1997.

158.   Defendant Ronald H. Hovey, Jr. is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.   Upon information and belief, defendant Hovey personally participated in the unlawful police action on May 18, 1997.

159. Defendant Robert A Jureller is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.   Upon information and belief, defendant Jureller personally participated in the unlawful police action on May 18, 1997.

160.   Defendant Stephen P. Kealy is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction

34

of defendant Superintendent James McMahon.  Upon information and belief, defendant Kealy personally participated in the unlawful police action on May 18, 1997.

161.  Defendant Troy D. Little is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.  Upon information and belief, defendant Little personally participated in the unlawful police action on May 18, 1997.

162.  Defendant Edward J. Marecek is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.  Upon information and belief, defendant Marecek personally participated in the unlawful police action on May 18, 1997.

163.  Defendant Ronald G. Morse is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.  Upon information and belief, defendant Morse personally participated in the unlawful police action on May 18, 1997.

164.  Defendant Paul M. Murray is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.  Upon information and belief, defendant Murray personally participated in the unlawful police action on May 18, 1997.

165.  Defendant Anthony W. Randazzo is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon.  Upon information and belief, defendant Randazzo personally participated in the unlawful police action on May 18, 1997.

35

166. Defendant Allen Riley is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon. Upon information and belief, defendant Riley personally participated in the unlawful police action on May 18, 1997.

167. Defendant Chris A. Smith is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon. Upon information and belief, defendant Smith personally participated in the unlawful police action on May 18, 1997.

168. Defendant Frederick A. Smith is, and at all times relevant hereto was, a trooper employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon. Upon information and belief, defendant Smith personally participated in the unlawful police action on May 18, 1997.

169. Defendant Steven B. Kruth at all times relevant hereto was a sergeant employed by the New York State Police Department and working under the supervision and direction of defendant Superintendent James McMahon. Upon information and belief, defendant Kruth personally participated in the unlawful police action on May 18, 1997.

170. Defendants John Doe 1-100 and Jane Doe 1-100 are sued by such fictitious names because their true identities have yet to be ascertained. Upon information and belief, they personally participated in the unlawful police action of May 18, 1997.

## FACTUAL ALLEGATIONS

171. Plaintiffs are Native American Indians and two Caucasians sympathetic to the political issues of concern to Native Americans all of whom were variously beaten, harassed, and

36

unlawfully arrested and imprisoned by the State Police and members of the Sheriff's Department on May 18, 1997. Their physical injuries and the violations of their civil rights, including their rights of free speech, freedom of religion, and freedom of assembly, are the direct result of an unlawful police action and excessive use of force in response to a non-violent gathering of Native Americans on private property belonging to plaintiff Andrew Jones.

A.    The May 18, 1997 Gathering

172.    The purpose of the Plaintiffs' gathering on May 18, 1997, was threefold: (i) to protest against certain members of the Onondaga Council of Chiefs, (ii) to engage in a "sacred fire" religious ceremony, and (iii) to enjoy a community dinner. In advance of that gathering, several defendants, under color of state law, made plans to disrupt the gathering and to prevent the Plaintiffs from obtaining publicity for their political and social grievances.

B.    The Implementation of the Indian Detail by Defendants James McMahon, James Parmley, George Beach, and Sheriff Kevin Walsh

173.    On May 15, 1997, in advance of the gathering, defendant State Police Investigator Dennis Blythe and Major Paul Zemens of the Onondaga County Sheriff's Department received information from sources that the State Police and Sheriff's Department have refused to disclose, indicating that protestors intended to close I-81 during the gathering. Even though people at the site of the gathering questioned by defendant Blythe on May 16, 1997 denied having any intention of closing the road, defendant State Police Major James Parmley, along with Captains George Beach and John Wood -- with the approval of defendant Superintendent James McMahon and the active cooperation of Sheriff Kevin Walsh -- assembled an "Indian detail" of over 100 State Police and Sheriff's Department personnel in order to be prepared to respond in a military fashion

37

to the gathering. Of particular concern to defendants was a leaflet circulated by certain of the Plaintiffs several days before the gathering, announcing a "media event" protesting the tax agreement between New York State and so-called Onondaga Chiefs. Defendants improperly assumed that the "media event" was intended to refer to acts of violence and the blocking of I-81.

174. Also on May 15, 1997, in connection with establishing the "Indian detail," defendants Major James Parmley, Captain George Beach, and Investigator Dennis Blythe met with Ollie Gibson and Irwin Powless, Jr., who claim to be Chiefs of the Onondaga Indian Nation. At that meeting, to which the organizers of the gathering were not invited, the State Police representatives convinced Ollie Gibson to authorize trespass complaints against many of the Plaintiffs. Moreover, even though the interests of the purported Onondaga Chiefs clearly conflict with those of the Plaintiffs -- who oppose their leadership -- defendants Parmley and Beach did not speak to protest organizers prior to the May 18 gathering. Had those defendants sought the views of the plaintiffs, they would have learned that the protest was intended to be peaceful.

175. On information and belief, Zemens and Walsh coordinated several days in advance of the gathering with defendants Parmley and Beach, among others, and decided (i) that large scale arrests of the Plaintiffs -- who defendants purportedly perceived to be "outside agitators" and "dissident Indians" -- would be made at the May 18 gathering, and (ii) that the Onondaga County Sheriff's Department would furnish personnel, equipment, and vehicles and participate in the May 18, 1997 police action by (a) closing down both lanes of I-81 to traffic while the police action took place and (b) transporting any arrested protestors and detaining them at the Onondaga County Justice Center.

176.    Also as part of a response to the gathering planned and organized by, among others, Major James Parmley, Captain George Beach, and Captain John Wood of the State Police and Sheriff Kevin Walsh and Major Paul Zemens of the Sheriff's Department several days before the gathering, members of the Onondaga County Sheriff's Department were mobilized and equipped with transport vans on the morning of May 18 in order to take arrested Plaintiffs into custody and to transport arrested Plaintiffs to the Onondaga County Justice Center,

177.    Although the organizers of the May 18 gathering intended the gathering to be peaceful, and attempted to convey that intention to defendants prior to the gathering, the defendants, in response to the gathering, assembled over 100 State Police and Sheriff's Department employees near the site of the gathering on the morning of May 18, 1997, and equipped them with riot gear, including helmets, riot batons and shields. All of the State Police were members of the "Indian detail," set up as a special unit within the State Police's Troop D zone, encompassing the Syracuse area. Troop D's "Indian detail" was similar to a special detail assembled in Troop A, near the Cattaraugus Indian territory in Bryant, New York several weeks earlier to deal with a series of recent protests on Indian territories. The "Indian detail," which consisted of several hundred state troopers, was designed and equipped to employ riot squad tactics against the Native Americans gathered on Mr. Jones' private property. The Sheriff's Department, acting on instructions from Sheriff Kevin Walsh, assisted the State Police by closing the northbound and southbound lanes of I-81, by assisting in the improper arrest and detention of Plaintiffs, and by holding Plaintiffs in custody for one to several days.

C.      The May 18, 1997 Incident

39

178. On the morning of May 18, 1997, the "Indian detail" was assembled, supervised by defendants Major Parmley, Captains George Beach and John Wood, Lieutenant Thomas Connelly, and Zone Sergeant Robert Haumann. At the staging area for the Indian detail, the State Police troopers were addressed by Major James Parmley, Captain George Bench, and Zone Sergeant Haumann, among others. Among other things, those defendants (i) advised the detail to use force and other military tactics against the civilian Plaintiffs, (ii) instructed the detail to make arrests, even though the Plaintiffs at the gathering were exercising their lawful First Amendment rights, (iii) advised the detail that they would ensure that the detail "outnumbered" the Native American Plaintiffs, (iv) improperly instructed the detail that it was a Native American battle tactic to place women and children between the Native American men and the troopers, thereby giving the false impression that the Native American Plaintiffs were preparing for a violent confrontation with the troopers; (v) improperly instructed and/or permitted members of the detail to remove or conceal the name tags from their uniforms so that they would not be identified by the Plaintiffs, and (vi) improperly instructed members of the detail to carry batons and to use them to push peaceful Plaintiffs lawfully assembled.

179. Plaintiffs began to gather on Andrew Jones' property at approximately 1:00 p.m. Because the organizers of the gathering wanted to attract public attention to their cause, they had informed the news media of the gathering, and had scheduled a number of public speakers, as well as a Native American religious ceremony and a community dinner, as part of the day's events.

180. Upon allegedly hearing reports that a few of the participants in the gathering had supposedly entered the roadway, the contingent of State Police and Sheriff's Department employees, who had been waiting near the protest site, rerouted traffic from the northbound lane of I-81, closed

40

down the northbound lane completely, and marched south down the northbound lane to the site of the protest. Attempting to avoid any confrontation, plaintiff Stonehorse Goeman tried to speak to defendants Captain George Beach and Zone Sergeant Robert Haumann in order to assure them that the gathering would remain peaceful and orderly. Defendants Beach and Haumann ignored Mr. Goeman's attempt to enter into a peaceful dialogue with them. Nevertheless, Mr. Goeman assured Beach and Haumann that the protestors, who included a large number of women, children and the elderly, would remain peaceful and would not enter the roadway.

181. Prior to arriving at the scene of the protest, most of the defendant State Police troopers removed or concealed their name tags and identifying badges, even though such badges are required by internal State Police regulations to be worn. The State Police troopers removed or concealed their badges because they did not wish to be identified by the Plaintiffs whom they were about to beat, mistreat, and arrest. The State Police troopers' removal of their name tags was condoned and suggested by Major James Parmley and Captain George Beach, the senior supervising officers at the scene. Because the State Police troopers were not wearing name tags, Plaintiffs are not able, in many instances, to identify the State Police trooper who falsely arrested or used excessive force against them.

182. The State Police troopers and Onondaga County Sheriff's Department personnel arrived at the scene of the gathering at approximately 2:00 p.m. Even though the participants in the gathering were peacefully on Mr. Jones' property -- clearly signaling the lack of any intent to engage in a confrontation -- the State Police -- led by the defendants Major James Parmley and Captain George Beach -- assembled in line formation on the eastern perimeter of the I-81 northbound roadway and, without any audible warning, illegally marched forward trespassing onto the property

41

of Andrew Jones. Mr. Jones repeatedly notified State Police troopers Mark Chafee, Glenn Miner and the other approaching State Police troopers that they were trespassing on private property. Nevertheless, defendants Chafee and Miner threw him to the ground, beat him, and placed handcuffs on him. Because the State Police had not given any audible warning or even attempted to explain the reason for the arrests to the Plaintiffs, none of the frightened Plaintiffs understood why they were being arrested. Consequently, many of the Plaintiffs simply looked on in shock as the defendants clubbed, beat, and kicked many of the Plaintiffs who did not flee from the Jones property immediately. Most of the Plaintiffs who were not arrested fled from the scene in terror, afraid for their lives. Among those who fled from the scene were several infant Plaintiffs, who hid in a wooded area near Andrew Jones' property and could not be located by their parents or guardians for a long period of time following the police assault.

183. Among those arrested and detained by defendants was plaintiff Marie Peters, an Akwesasne Mohawk medicine woman. At the time of her arrest, Ms. Peters was on private property belonging to plaintiff Andrew Jones, where she was conducting for the assembled Plaintiffs a "sacred fire" religious ceremony according to traditional custom. Ms. Peters conducted the "sacred fire" ceremony in order to consult the advice of and implore the intercession of the "Great Spirit." Even though Ms. Peters was conducting the ceremony on private property belonging to Andrew Jones, defendant Sergeant Joseph E. Smith, assisted by defendants Sergeant Mark Atasanoff and Troopers James Jecko and Michael Slade suddenly and without warning grabbed her arms, knocked over the arbor protecting the sacred fire and pulled her to the ground. Throughout the encounter, Ms. Peters attempted to protect the sacred pipe and eagle feather, which were used in the ceremony. The pipe and feather fell to the ground and these sacred objects were trampled on by defendant State

Police officers. Ms. Peters was then arrested and roughly pushed and carried to a waiting police vehicle, causing her to faint. Ms. Peters' arrest ensured that the sacred fire religious ceremony could not be continued. Ms. Peters' assistant in the ceremony, plaintiff Robert Bucktooth was also brutally beaten and arrested.

184. The defendants' use of excessive force against Plaintiffs, as well as their unlawful actions in quashing the peaceful political, religious and social gathering on May 18, were intended as "payback" for an earlier confrontation between the State Police and the Seneca Indians in Bryant, New York.

> D.    The False Arrest, Detention and Prosecution of Plaintiffs by the State Police Defendants and by the Onondaga County Sheriff's Department

185. In all, 24 of the Plaintiffs were arrested and many more were harassed and terrorized by the defendant State Police and Sheriff's Department employees. The State Police, assisted by the Onondaga County Sheriff's Department, loaded those who were arrested into police cars and took most of them to the Onondaga County Justice Center, where they were held for several hours to several days before being arraigned and released on bail. Despite the fact that several of the Plaintiffs had sustained injuries as a result of the beatings they received from the defendants, none of the Plaintiffs were provided with appropriate medical treatment. Among the Plaintiffs who suffered physical injuries were Andrew Jones, Robert Bucktooth, Cheryl Bucktooth, Ronald Jones, Jr., Kenneth Kappelmeier, Dehyneyyuks (Alfred Logan, Jr.), Malcolm Hill, Melissa Smith, and Marie Peters.

186. The following Plaintiffs were falsely arrested and prosecuted: Andrew Jones, Robert Bucktooth, Cheryl Bucktooth, Kenneth Kappelmeier, Stonehorse Goeman, Marie Peters,

43

Holly Lyons, Andrea Potter, Samantha Thompson, Martha Skye, Verna Montour, Sesily Snyder, Alice Thompson, Malcolm Hill, Kathy Melissa Smith, William Green, III, Kevin Henhawk, Dyhyneyyuks (Alfred Logan), Anthony Kloch, Jr., Duane Beckman, Kakwirakeron (Art Montour), Tekarontake (Paul Delaronde), and Teyonienkwataseh (Art Montour, Jr.).

187. Of the 24 Plaintiffs who were arrested on May 18, 1997, none were found to have committed any criminal offense. As to all but one, Mr. Kappelmeier, all charges were either dismissed by Onondaga Town  Justice Philip Miller, before whom most of the Plaintiffs were prosecuted, or were dropped by the prosecuting attorney after Plaintiffs' counsel had moved to dismiss the charges for insufficiency. Mr. Kappelmeier was acquitted of the charges against him arising from the incident after a jury trial.

E.    Defendants McMahon, Parmley, Beach, Wood, Connelly and Haumann
      Improperly Trained the Indian Detail

188. On information and belief, the State Police "Indian detail" (i) received improper training for their assignments, (ii) received improper instruction with regard to the procedure to be used in effecting arrests, or the criteria to be used in determining which plaintiffs would be arrested, and (iii) were not given amplified communication equipment in good working order.

189. On information and belief, the State Police assigned to the Troop D "Indian detail" were not adequately or accurately informed as to the nature of the gathering near I-81, nor were they adequately trained or instructed with regard to (i) non-violent crowd control methods, (ii) appropriate circumstances in which to use force in effecting arrests, (iii) appropriate levels of force to be used in effecting arrests, or (iv) appropriate procedures to be followed with respect to (a)

44

warning the plaintiffs prior to their arrests of what was happening, (b) informing the plaintiffs of the

basis for their arrests, (c) taking care not to injure or harm the plaintiffs, among whom were elderly

and infirm persons and children, and (d) recognizing and respecting the customs, laws, religions, and

property of the Onondaga people. Also, the State Police were not sufficiently trained in Indian law,

customs, or practices nor were they briefed on the territorial boundaries of the Onondaga Nation.

190.    Defendants McMahon, Parmley, Beach, Wood, Connelly and Haumann are

responsible for improperly training the Indian detail.

F.    Plaintiffs Were Treated Differently From Others Similarly Situated

191.    With respect to the events underlying the claims in this action, Plaintiffs are

similarly situated to any New York State residents who engage in a political demonstration.

192.    By implementing and deploying the "Indian detail" in response to the May 18

gathering, defendants have treated the Native American Plaintiffs differently and less favorably than

they have treated other New York residents who engage in political demonstrations to which the

State Police and Sheriff's Department has responded, in that a group of non-Native American

protestors engaged in political demonstrations would not have not been subject to the implementation

and deployment of an "Indian detail." Moreover, had defendants been responding to a gathering of

non-Native American protestors, they (i) would not have assumed that the gathering was intended

to be violent, despite the assurances of protestors to the contrary, (ii) would not have taken pains to

ensure that they were not "outnumbered" by the protestors, (iii) would not have instructed members

of the Indian detail that it was the practice of the Indians to place their women and children in front

of the men when being attacked thereby giving the false impression that the gathering was intended

to be violent, and (iv) would have ensured that they had working megaphones and other means of being heard by the numerous protestors gathered on Mr. Jones' property.

G.    The Role of the Onondaga County Sheriff's
      Department in the May 18, 1997 Incident

193.    The role of the Onondaga County Sheriff's Department in the arrest and detention of the Plaintiffs was planned in advance by Major Paul Zemens and Sheriff Kevin Walsh. On information and belief, Zemens and Walsh coordinated several days in advance of the gathering with defendants Parmley and Beach, among others, and decided (i) that large scale arrests of the Plaintiffs -- who defendants wrongfully perceived to be "outside agitators" and "dissident Indians" -- would be made at the May 18 gathering, and (ii) that the Onondaga County Sheriff's Department would furnish personnel, equipment, and vehicles and participate in the May 18, 1997 police action by (a) closing down both lanes of I-81 to traffic while the police action took place and (b) transporting any arrested protestors and detaining them at the Onondaga County Justice Center.

194.    After they initially were arrested by the State Police, the arrested Plaintiffs were placed in handcuffs by the State Police and were turned over to the custody of the Onondaga County Sheriff's Department.

195.    Sheriff's Department employees -- acting under the direction of defendant Kevin Walsh -- transported the arrested Plaintiffs, several of whom were physically injured, to the Onondaga County Justice Center in Syracuse, New York. Once the Plaintiffs arrived at the Justice Center, Sheriff's Department employees made no effort to ensure that the injured Plaintiffs received medical attention.

46

196.   Because the Plaintiffs were falsely arrested by the State Police -- in that no reasonable person would have believed that any of the arrested Plaintiffs had committed crimes during the incident -- their continued detention by the Onondaga County Sheriff's Department also constituted false arrest and imprisonment.

197.   Among the Plaintiffs who did not receive medical treatment -- even though they requested it -- were the following:

(a)   Plaintiff Robert Bucktooth was severely beaten by State Police during the incident.  Even though he informed Sheriff's Department employees that he was injured, he was not examined by a doctor, nor did he receive medical attention until his release from prison the next day.

(b)   Plaintiff Malcolm Hill was beaten by State Police during the incident and has a serious heart condition requiring medication.  He informed Sheriff's Department employees that he was injured,  and that he had a heart condition requiring medication.  However, he was informed that he needed  a doctor's order to obtain the medication he required.  Mr. Hill was detained overnight at the Onondaga County Justice Center without ever receiving the medication he requested or being examined by a doctor.

(c)   Plaintiff Dyhyynyyuks (Alfred Logan, Jr.) was beaten by State Police during the incident.  Even though he informed Sheriff's Department employees that he was injured, he was not examined by a doctor, nor did he receive medical attention until his release from prison the next day.

(d)   Plaintiff Andrew Jones was beaten by State Police during the incident, suffering an injury to his knee.  Even though he informed Sheriff's Department employees that he was

47

injured, he was not examined by a doctor, nor did he receive medical attention until his release from prison the next day.

(e)  Plaintiff Ron Jones, Jr. was beaten by State Police during the incident. Even though he informed Sheriff's Department employees that he was injured, he was not examined by a doctor, nor did he receive medical attention until his release from prison the next day.

H.     The State Police Cover-Up

198.  During the May 18, 1997 incident, various State Police troopers at the direction of Major Parmley and others wrongfully confiscated a newsperson's camera, improperly  blocked news cameras that were filming the gathering, and, under color of state law, wrongfully  ordered newspeople to cease filming and to leave Mr. Jones' private property.

199.  Thereafter, because the May 18, 1997, incident was widely covered by local news agencies, and because of public concern over the brutality of the arrests, defendant State Police Superintendent James McMahon authorized an investigation into the actions of the State Police on that day.   That investigation was a cover-up, designed to deflect negative attention from the defendants and to gloss over the flagrant abuses of the Plaintiffs' civil  rights. The state police report resulting from the investigation, a summary of which was widely  disseminated to the news media, contained numerous factual misstatements and errors.

200.  The state police report also failed to make any reference to a key fact -- that the gathering occurred on private property belonging to an Onondaga Indian, plaintiff Andrew Jones. Instead, the State Police simply assumed that all Plaintiffs standing on Mr. Jones' property were trespassing on I-81 property.

48

201. That the State Police's investigation would attempt to cover up any wrongdoing by the State Police was predicted by former New York state police investigator Salvatore Valvo. Mr. Valvo had originally been assigned by state police superintendent James McMahon to lead the investigation of the May 18, 1997 incident, but was removed from the investigation and demoted to file clerk duties when he attempted to question defendant Captain George Beach aggressively about the events of that day. On information and belief, officials of the State Police demoted Mr. Valvo in retaliation for his aggressive investigation of the incident.

I.      The State Police Report

202. Even though the State Police investigation inappropriately exonerated all of those involved in the planning and implementation of the unlawful police action, the report summarizing the investigation admitted (i) that the State Police should have at least attempted to meet with the plaintiffs prior to marching onto Mr. Jones' property, and (ii) that the State Police's "Indian detail" was not sufficiently trained and prepared to resolve the situation in a non-violent manner:

> *[i]t is recommended that State Police command personnel meet, or at least attempt to meet, with the protest leader or spokesperson to establish ground rules relative to traffic control, traffic or business disruption, parking and staging areas, and lawful conduct in general, including specific laws which limit or prescribe the conduct of plaintiffs.*
>
> . . .
>
> On May 16, 1997, Investigator Blythe met with Kenneth Kappelmeyer [sic], Ronny Jones, and several women who assured him that they did not intend to close I-81 as part of their protest. *While Troop D command personnel met with the traditional Chiefs,* [sic] *the Chiefs were in opposition to the plaintiffs and were not recognized as leaders by members of the protest group. Troop D personnel should have attempted to set up a meeting with protest leaders in addition to meeting with the Chiefs.*

49

Communications at the site of the demonstration also could have been better. *A public address system to ensure that communications were heard and understood by both plaintiffs and members of the police detail should have been available and utilized by police commanders.* Such a system should be used to announce what will be regarded as unacceptable conduct, to announce what the consequences of illegal conduct will be, and, if necessary and appropriate, to announce that the gathering has become unlawful and must disperse.

. . .

A Trooper's understanding of his or her instructions is a major function of the pre-demonstration briefing. *The briefing for this incident failed to address several contingencies and dealt with other concerns in terms that were too general.* The Troopers were told that if the plaintiffs closed the road, the detail would respond, clear the roadway and make arrests if necessary . . . [b]eyond this, however, *the briefing failed to address such topics as the limits to the advance, the identification of disruptive leaders or post-arrest identification of defendants, and the criteria for making arrests. While the Troopers understood what they were to do if the plaintiffs were on the road and refused to leave it, they did not have specific instructions for other contingencies that might have developed.*

203.   Thus, even the State Police investigation concluded that the "Indian detail" was inadequately trained and ill-prepared to accomplish its mission with due regard to the civil rights of the Plaintiffs. However, the report inappropriately exonerated the State Police and excused their unlawful conduct, concluding that the force used by the State Police was not excessive and was even necessary. The conclusions of the State Police report -- condoned and ratified by defendant James McMahon -- ignore the police's brutal treatment of the Plaintiffs on that day in order to whitewash the State Police's inappropriate conduct and excessive use of force against Plaintiffs.

J.   The Notice of Claim

204.   On August 12, 1997, Plaintiffs caused to be served copies of a notice of claim, notifying defendants of Plaintiffs' claims against them.

50

## FACTUAL ALLEGATIONS AS TO EACH DEFENDANT

### Superintendent James McMahon

Upon information and belief, defendant McMahon's unconstitutional and tortious conduct and, consequently, his liability, includes but is not limited to his conduct described in paragraphs 2, 3, 8, 11, 114, 173, 190, 192, 199, 203, and the following paragraphs.

205.    Mr. McMahon personally was involved in planning and implementing the "Indian detail" as well as the May 18, 1997 police action. Defendant McMahon took part in planning sessions with defendant Major James Parmley and Captain Beach, and he was kept apprised of the actions of the Indian detail by, among others, Captain George Beach throughout May 18, 1997. Defendant McMahon failed to take steps to  ensure that the State Police assigned to the Troop D "Indian detail" were adequately or accurately informed as to the nature of the gathering near I-81, or were adequately trained or instructed with regard to (i) non-violent crowd control methods, (ii) appropriate circumstances in which to use force in effecting arrests, (iii) appropriate levels of force to be used in effecting arrests, or (iv) appropriate procedures to be followed with respect to (a) warning the plaintiffs prior to their arrests of what was happening, (b) informing the plaintiffs of the basis for their arrests, (c) taking care not to injure or harm the plaintiffs, among whom were elderly and infirm persons and children, and (d) recognizing and respecting the customs, laws, religions, and property of the Onondaga people. Also, defendant McMahon did not ensure that the State Police were  sufficiently trained in Indian law, customs, or practices or that they were briefed on the territorial boundaries of the Onondaga Nation.

206.    Defendant McMahon also took steps to cover up the wrongful actions of the State Police taking part in the Indian detail by initiating and later ratifying a State Police report that

51

was false and misleading in its description of the events of May 18, 1997, and that wrongly exonerated all of the State Police who participated in the police action.

207.    Defendant McMahon caused the acts of excessive force to occur against Plaintiffs by his deliberate indifference or by ratifying, condoning or ordering such acts.

208.    Defendant McMahon caused Plaintiffs to be unlawfully arrested, detained, and prosecuted through his deliberate indifference or by ratifying, condoning or ordering such acts.

209.    Defendant McMahon's conduct described above in planning and carrying out the unlawful  police action of May 18, 1997 constitutes deprivation of the rights to freedom of speech, assembly, and religion.  Defendant McMahon authorized and condoned the use of excessive force and intimidation by State Police troopers to prevent Plaintiffs' exercise of the rights of free speech and freedom of religion.  As a result of his actions, the Plaintiffs' gathering was terminated, their ability to speak out was suppressed, and several Plaintiffs were injured and falsely arrested and imprisoned.

210.    Defendant McMahon's conduct described above in planning and carrying out the unlawful  police action of May 18, 1997 constitutes a conspiracy to deprive Plaintiffs of their rights to equal protection under the law.  Defendant McMahon treated Plaintiffs less favorably than non-Native American political demonstrators.

### Sheriff Kevin Walsh

Upon information and belief, defendant Walsh's unconstitutional and tortious conduct and, consequently, his liability, includes but is not limited to his conduct described in paragraphs 3, 8, 11, 12, 115, 172, 173, 176, 177, 192, 193, 194, 195, 196, 197, and the following paragraphs.

52

211.    Upon information and belief, Defendant Walsh personally was involved in planning and implementing the "Indian detail" as well as the May 18, 1997 police action. Defendant Walsh took part in planning sessions with defendant Major James Parmley and Captain Beach. Defendant Walsh instructed Major Paul Zemens to attend planning sessions for the "Indian detail" as a Sheriff's Department representative. Defendant Walsh assisted the State Police by authorizing the use of Sheriff Department personnel and equipment in order illegally to arrest  and detain Plaintiffs.    Sheriff Walsh failed to take steps to ensure that the Sheriff's Department personnel assigned to the Troop D "Indian detail" were adequately or accurately informed as to the nature of the gathering near I-81. Sheriff Walsh also reported, wrongly, to State Police Major James Parmley that none of the arrested Plaintiffs were injured when, in actuality, several were injured and had requested, and been denied, medical attention. Sheriff Walsh recklessly caused the arrested Plaintiffs not to receive the medical attention they requested.

212.    Defendant Walsh caused Plaintiffs to be unlawfully arrested, detained, and prosecuted through his deliberate indifference or by ratifying, condoning or ordering such acts.

213.    Defendant Walsh's conduct described above in planning and carrying out the unlawful  police action of May 18, 1997 constitutes deprivation of the rights to freedom of speech, assembly, and religion.  Defendant Walsh authorized and condoned the use of excessive force and intimidation by State Police troopers to prevent Plaintiffs' exercise of the rights of free speech and freedom of religion. As a result of his actions, the Plaintiffs' gathering was terminated, their ability to speak out was suppressed and several Plaintiffs were injured and falsely arrested and imprisoned.

214.    Defendant Walsh's conduct described above in planning and carrying out the unlawful police action of May 18, 1997 constitutes a conspiracy to deprive Plaintiffs of their rights

53

to equal protection under the law. Defendant Walsh treated Plaintiffs less favorably than non-Native American political demonstrators.

### Onondaga County/Onondaga County Sheriff's Department

Upon information and belief, defendants Onondaga County and the Onondaga County Sheriff's Department's unconstitutional and tortious conduct and, consequently, its liability, includes but is not limited to paragraphs 3, 8, 11, 12, 112, 113, 172, 173, 176, 177, 192, 193, 194, 195, 196, 197, and the following paragraphs.

215. Defendants Onondaga County and Onondaga County Sheriff's Department are liable as municipal entities by virtue of the actions of defendant Sheriff Kevin Walsh and Major Paul Zemens, policy makers, in (i) planning and implementing the "Indian detail" as well as the May 18, 1997 police action, (ii) taking part in planning sessions with defendant Major James Parmley and Captain Beach, (iii) instructing Major Paul Zemens to attend planning sessions for the "Indian detail" as a Sheriff's Department representative, (iv) assisting the State Police by authorizing the use of Sheriff Department personnel and equipment in order to arrest and detain Plaintiffs, (v) failing to take steps to ensure that the Sheriff's Department personnel assigned to the Troop D "Indian detail" were adequately or accurately informed as to the nature of the gathering near I-81, (v) reporting, wrongly, to State Police Major James Parmley that none of the arrested Plaintiffs were injured when, in actuality, several were injured and had requested, and been denied, medical attention, and (vi) recklessly causing the arrested Plaintiffs not to receive the medical attention they requested.

### Major James Parmley

Upon information and belief, defendant Parmley's unconstitutional and tortious conduct and, consequently, his liability, includes but is not limited to his conduct described in

54

paragraphs 2, 3, 8, 11, 116, 172, 173, 174, 175, 176, 178, 181, 182, 188, 189, 190, 192, 193, and the following paragraphs.

216. Defendant Parmley personally was involved in that he was the most senior supervising State Police officer present during the May 18, 1997 police action, he was responsible for planning and organizing the Indian detail and instructing its members on their mission. Major Parmley attended planning and strategy sessions concerning the Indian detail, including a meeting on May 16, 1887 with members of the so-called Chiefs of the Onondaga Nation, at which State Police representatives convinced the Chiefs to sign trespass complaints against the protestors. Major Parmley advised the members of the Indian detail to use military style tactics against the Native American Plaintiffs, and expressed concern that the members of the detail not be outnumbered by Native Americans. As the senior supervising officer at the scene, Major Parmley was responsible for (i) ordering state police troopers to trespass onto the private property of Plaintiff Andrew Jones and disperse the Plaintiffs who were peacefully gathered there, (ii) ordering state police troopers to arrest Plaintiffs who were lawfully standing on Mr. Jones' private property exercising their First Amendment rights, and (iii) instructing members of the Indian detail to remove or conceal their name tags and identifying badges, so that their names would not be known to the Plaintiffs. Because of his improper instructions prior to the confrontation, and his failure to act during the incident, Major Parmley was also responsible for causing State Police troopers to beat Plaintiffs, including but not limited to Marie Peters, Andrew Jones, Robert Bucktooth, Kenneth Kappelmeier, Kevin Henhawk, Alfred Logan, Kathy Smith, Malcolm Hill, and others, in the course of their arrests.

217. Major Parmley also was personally responsible for preventing new reporters from covering the May 18, 1997 incident, physically blocking the news cameraman's camera, and for

ordering the removal of a local Syracuse television news cameraman from the scene, causing him to be arrested, and confiscating his camera.

218.    Major Parmley caused the acts of excessive force to occur against Plaintiffs by his deliberate indifference or by ordering, ratifying or condoning such acts.

219.    Major Parmley caused Plaintiffs to be unlawfully arrested, detained, and prosecuted through his deliberate indifference or by ordering, ratifying and condoning such acts.

220.    Major Parmley trespassed on Andrew Jones' property.

221.    Defendant Parmley's conduct described above in planning and carrying out the unlawful police action of May 18, 1997 constitutes deprivation of the rights to freedom of speech, assembly, and religion.  Defendant Parmley authorized and condoned the use of excessive force and intimidation by State Police troopers to prevent Plaintiffs' exercise of the rights of free speech and freedom of religion.  As a result of his actions, the Plaintiffs' gathering was terminated, their ability to speak out was suppressed and several Plaintiffs were injured and falsely arrested and imprisoned.

222.    Defendant Parmley's conduct described above in planning and carrying out the unlawful police action of May 18, 1997 constitutes a conspiracy to deprive Plaintiffs of their rights to equal protection under the law.  Defendant Parmley treated Plaintiffs less favorably than non-Native American political demonstrators.

### Captain George Beach

Upon information and belief, defendant Beach's unconstitutional and tortious conduct and, consequently, his liability, includes but is not limited to his conduct described in paragraphs 2, 3, 8, 11, 117, 173, 174, 175, 176, 178, 180, 181, 182, 188, 189, 190, 192, and the following paragraphs.

56

223.    Defendant Beach personally was involved in that he was one of the senior supervising State Police officers present during the May 18, 1997 police action, and he was responsible for planning and organizing the Indian detail and instructing its members on their mission. Captain Beach attended planning and strategy sessions concerning the Indian detail, including a meeting on May 16, 1887 with members of the so-called Chiefs of the Onondaga Nation, at which State Police representatives convinced the Chiefs to sign trespass complaints against the protestors. On information and belief, Captain Beach instructed the State Police officers who took part in the May 18 police action on the tactics they would use against the Plaintiff protestors, including the State Police's use of their batons to assault people. As one of the senior supervising officers at the scene, Captain Beach was responsible for (i) ordering state  police troopers to trespass onto the private property of Plaintiff Andrew Jones and disperse the Plaintiffs who were peacefully gathered there, (ii) ordering state police troopers to arrest Plaintiffs who were lawfully standing on Mr. Jones' private property exercising their First Amendment rights, and (iii) instructing members of the Indian detail to remove or conceal their name tags and identifying badges, so that their names would not be known to the Plaintiffs.  Because of his improper instructions prior to the confrontation, and his failure to act during the incident, Captain Beach was also responsible for causing State Police troopers to beat Plaintiffs, including but not limited to Marie Peters, Andrew Jones, Robert Bucktooth, Kenneth Kappelmeier, Kevin Henhawk, Alfred Logan, Kathy Smith, Malcolm Hill, and others, in the course of their arrests.

224.  Captain Beach caused the acts of excessive force to occur against  Plaintiffs by his deliberate indifference or by ratifying, condoning or ordering such acts.

57

225. Captain Beach caused Plaintiffs to be unlawfully arrested, detained, and prosecuted through his deliberate indifference or by ratifying, condoning, or ordering such acts.

226. Captain Beach trespassed on Andrew Jones' property.

227. Defendant Beach's conduct described above in planning and carrying out the unlawful police action of May 18, 1997 constitutes deprivation of the rights to freedom of speech, assembly, and religion. Defendant Beach authorized and condoned the use of excessive force and intimidation by State Police troopers to prevent Plaintiffs' exercise of the rights of free speech and freedom of religion. As a result of his actions, the Plaintiffs' gathering was terminated, their ability to speak out was suppressed and several Plaintiffs were injured and falsely arrested and imprisoned.

228. Defendant Beach's conduct described above in planning and carrying out the unlawful police action of May 18, 1997 constitutes a conspiracy to deprive Plaintiffs of their rights to equal protection under the law. Defendant Beach treated Plaintiffs less favorably than non-Native American political demonstrators.

### Captain John Wood

Upon information and belief, defendant Wood's unconstitutional and tortious conduct and, consequently, his liability, includes but is not limited to his conduct described in the paragraphs 2, 3, 8, 11, 118, 176, 178, 190, and the following paragraphs.

229. Defendant John Wood personally was involved in the May 18, 1997 police action. He was the supervising officer at the scene for State Police personnel assigned to the BCI division, who assisted the State Police troopers with their trespass onto Andrew Jones' property and with the unlawful arrests, use of excessive force, and First Amendment violations charged herein.

58

230. On information and belief, Captain Wood instructed the BCI personnel who took part in the May 18 police action on the tactics they would use against the Plaintiff protestors. As one of the senior supervising officers at the scene, Captain Wood was responsible for (i) ordering BCI personnel to assist state police troopers as they trespassed onto the private property of Plaintiff Andrew Jones and dispersed the Plaintiffs who were peacefully gathered there, and (ii) ordering BCI personnel to assist state police troopers as they arrested Plaintiffs who were lawfully standing on Mr. Jones' private property exercising their First Amendment rights. Because of his improper instructions prior to the confrontation, and his failure to act during the incident, Captain Wood also was responsible for causing State Police troopers to beat Plaintiffs, including but not limited to Marie Peters, Andrew Jones, Robert Bucktooth, Kenneth Kappelmeier, Kevin Henhawk, Alfred Logan, Kathy Smith, Malcolm Hill, and others, in the course of their arrests.

231. Captain Wood participated in, and personally assisted Trooper Harry Schleiser with, the arrest of Kathy Melissa Smith. Captain Wood knew or should have known that Ms. Smith's arrest lacked probable cause or reasonable suspicion that she had committed a crime, in that she was legally standing on Mr. Jones' property prior to her arrest.

232. Captain Wood caused the acts of excessive force to occur against Plaintiffs by his deliberate indifference or by ratifying, condoning or ordering such acts.

233. Captain Wood caused Plaintiffs to be unlawfully arrested, detained, and prosecuted through his deliberate indifference or by ratifying, condoning or ordering such acts.

234. Captain Wood trespassed on Andrew Jones' property.

235. Defendant Wood's conduct described above in planning and carrying out the unlawful police action of May 18, 1997 constitutes deprivation of the rights to freedom of speech,

59

assembly, and religion. Defendant Wood authorized and condoned the use of excessive force and intimidation by State Police troopers to prevent Plaintiffs' exercise of the rights of free speech and freedom of religion. As a result of his actions, the Plaintiffs' gathering was terminated, their ability to speak out was suppressed and several Plaintiffs were injured and falsely arrested and imprisoned.

236.   Defendant Wood's conduct described above in planning and carrying out the unlawful police action of May 18, 1997 constitutes a conspiracy to deprive Plaintiffs of their rights to equal protection under the law. Defendant Wood treated Plaintiffs less favorably than non-Native American political demonstrators.

### Lieutenant Thomas P. Connelly

Upon information and belief, defendant Connelly's unconstitutional and tortious conduct and, consequently, his liability, includes but is not limited to his conduct described in the following paragraphs.

237.   Defendant Connelly personally was involved in the May 18, 1997 police action. He was a supervising officer at the scene for State Police personnel assigned to the BCI division, who assisted the State Police troopers with their trespass onto Andrew Jones' property and with the unlawful arrests, use of excessive force, and First Amendment violations charged herein.

238.   On information and belief, Lieutenant Connelly instructed the BCI personnel who took part in the May 18 police action on the tactics they would use against the Plaintiff protestors. As one of the senior supervising officers at the scene, Lieutenant Connelly was responsible for (i) ordering BCI personnel to assist state police troopers as they trespassed onto the private property of Plaintiff Andrew Jones and dispersed the Plaintiffs who were peacefully gathered there, and (ii) ordering BCI personnel to assist state police troopers as they arrested Plaintiffs who were

60

lawfully standing on Mr. Jones' private property exercising their First Amendment rights. Because of his improper instructions prior to the confrontation, and his failure to act during the incident, Lieutenant Connelly was also responsible for causing State Police troopers to beat Plaintiffs, including but not limited to Marie Peters, Andrew Jones, Robert Bucktooth, Kenneth Kappelmeier, Kevin Henhawk, Alfred Logan, Kathy Smith, Malcolm Hill, and others, in the course of their arrests.

239.  Lieutenant Connelly knew or should have known that Plaintiffs' arrests lacked probable cause or reasonable suspicion that they had committed any crimes.

240.  Lieutenant Connelly caused the acts of excessive force to occur against Plaintiffs by his deliberate indifference or by ratifying, condoning or ordering such acts.

241.  Lieutenant Connelly caused Plaintiffs to be unlawfully arrested, detained, and prosecuted through his deliberate indifference or by ratifying, condoning or ordering such acts.

242.  Lieutenant Connelly trespassed on Andrew Jones' property.

243.  Defendant Connelly's conduct described above in planning and carrying out the unlawful police action of May 18, 1997 constitutes deprivation of the rights to freedom of speech, assembly, and religion. Defendant Connelly authorized and condoned the use of excessive force and intimidation by State Police troopers to prevent Plaintiffs' exercise of the rights of free speech and freedom of religion. As a result of his actions, the Plaintiffs' gathering was terminated, their ability to speak out was suppressed and several Plaintiffs were injured and falsely arrested and imprisoned.

244.  Defendant Connelly's conduct described above in planning and carrying out the unlawful police action of May 18, 1997 constitutes a conspiracy to deprive Plaintiffs of their rights to equal protection under the law. Defendant Connelly treated Plaintiffs less favorably than non-Native American political demonstrators.

61

Zone Sergeant Robert Haumann

Upon information and belief, defendant Haumann's unconstitutional and tortious conduct and, consequently, his liability, includes but is not limited to his conduct described in the following paragraphs.

245. Defendant Haumann personally was involved in that he was one of the senior supervising State Police officers present during the May 18, 1997 police action, and he was responsible for planning and organizing the Indian detail and instructing its members on their mission. Sergeant Haumann attended planning and strategy sessions concerning the Indian detail, including a meeting on May 16, 1997 with Onondaga County Sheriff Paul Zemens, at which the respective roles of the State Police and the Sheriff's Department in the May 18 police action were discussed and agreed upon. On information and belief, Zone Sergeant Haumann instructed the State Police officers who took part in the May 18 police action on the tactics they would use against the Plaintiff protestors, including the State Police's use of their batons to assault people and that they should remove their name tags and identifying badges so that they would not be identified by the Plaintiffs. As one of the senior supervising officers at the scene, Zone Sergeant Haumann was responsible for (i) ordering State Police troopers to trespass onto the private property of Plaintiff Andrew Jones and disperse the Plaintiffs who were peacefully gathered there, and (ii) ordering state police troopers to arrest Plaintiffs who were lawfully standing on Mr. Jones' private property exercising their First Amendment rights. Because of his improper instructions prior to the confrontation, and his failure to act during the incident, Zone Sergeant Haumann was also responsible for permitting State Police troopers to beat Plaintiffs including, but not limited to, Marie Peters, Andrew Jones, Robert