UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANDREW JONES, *et al.*,

                Plaintiffs,

v.                                                            5:98-CV-0374
                                                              (FJS/GHL)
JAMES W. MCMAHON, *et al.*,

                Defendants.
_____

APPEARANCES:                                                 OF COUNSEL:

MORVILLO, ABRAMOWITZ, GRAND, IASON          JODI MISHER PEIKIN, ESQ.
   ANELLO & BOHRER, P.C.
Attorneys for Plaintiffs
565 Fifth Avenue
New York, New York 10017

HOFFMANN, HUBERT & HOFFMANN                  TERRANCE J. HOFFMANN, ESQ.
Attorneys for Plaintiffs
4629 Onondaga Boulevard
Syracuse, New York 13219-3390

HON. ANDREW M. CUOMO                         SENTA B. SIUDA, ESQ.
Attorney General for the State of New York   Assistant Attorney General
Attorney for Defendants
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204

GEORGE H. LOWE, United States Magistrate Judge

**<u>MEMORANDUM-DECISION and ORDER</u>**
**<u>and REPORT-RECOMMENDATION</u>**

A summary of the legal claims asserted in this action, and a description of the incident giving rise to this action, are set forth in District Judge Scullin's Memorandum-Decision and Order of March 28, 2005 (Dkt. No. 387, as modified by Dkt. No. 395), and reference is made to that Memorandum-Decision and Order for a summary of those legal claims and a description of that incident.  Currently pending before the Court are four requests by Plaintiffs (Dkt. No. 429), and a motion to dismiss Plaintiffs' claims against Defendant Williams (Dkt. Nos. 427, 416).

I.      **Request for Order Either Permitting Plaintiffs to Re-Depose Retired Senior Investigator Dennis J. Blythe or Precluding Defendants from Relying on the Information Provided by Investigator Blythe's Confidential Sources for the Remainder of this Lawsuit**

Plaintiffs request an order either (1) permitting them to re-depose retired Senior Investigator Dennis J. Blythe for the limited purpose of discovering information regarding the identity and reliability of five confidential sources about whom he testified at his initial deposition, which was conducted on October 18, 2001, and November 27, 2001, or (2) precluding Defendants from relying on the information provided by Investigator Blythe's confidential sources for the remainder of this lawsuit.  (Dkt. No. 428, Part 1, at 3-8, 11.) Plaintiffs request this information, for the most part, to determine whether Investigator Blythe manufactured those sources well after the incident in question.  (*Id*. at 3-5.)

In essence, Defendants oppose Plaintiffs' request on two grounds: (1) the particular information that Plaintiffs seek (regarding the identity and reliability of the five confidential sources in question) has previously been adjudged by then-Magistrate Judge Sharpe and Chief Judge Scullin to be protected from disclosure by the informer's privilege and/or law enforcement privilege; and (2) Plaintiffs have already had ample opportunity to question Investigator Blythe

2

regarding everything about these five confidential sources other than about the subjects in question, i.e., regarding their identity and reliability.

In reply, Plaintiffs acknowledge that a defendant may ordinarily rely on the informer's privilege and/or law enforcement privilege as a "shield," to prevent disclosure of this information.  However, Plaintiffs argue that, in this instance, Defendants may not rely on such a privilege since they are using it, or certainly will use it at trial, as a "sword," specifically, as a means to support their affirmative defense of qualified immunity.  Furthermore, Plaintiffs argue that, although Judges Scullin and Sharpe did in fact rule, on November 17, 2003, and September 21, 2004, that the information in question was protected by the informer's privilege and/or the law enforcement privilege, their rulings then concluded that, as a result of the privilege, there was no need–*at that time*–for Defendants to disclose the identity of the sources.  In effect, Plaintiffs argue that the facts and issues of the case have changed, and they now need the withheld information.

Plaintiffs are correct that Defendants' Answers to Plaintiffs' Amended Complaint have, either implicitly or expressly, asserted qualified immunity as an affirmative defense in this action.[1]  For the sake of argument, I will assume that Plaintiffs are also correct that Defendants have previously relied, or attempted to rely, on the confidential information received by Investigator Blythe in support of their affirmative defense of qualified immunity, i.e., during their motion for partial summary judgment.[2]  I will also assume, for the sake of argument, that

---

[1]      (Dkt. No. 154, ¶¶ 39, 44; Dkt. No. 157, ¶¶ 39, 44; Dkt. No. 160, Defense, ¶ 2.)

[2]      (Dkt. No. 293, Part 18, ¶ 18 [Blythe Decl., stating that, on May 18, 1997, "I was very concerned about the possibility of gunplay" on the reservation, which concern he apparently communicated to Defendant George Beach and Major Paul Zemens at that time, but not

Defendants will, at trial, attempt to adduce evidence in support of this affirmative defense, and possibly move for dismissal under Rule 50 of the Federal Rules of Civil Procedure based on that evidence.  Finally, I will set aside–for the moment–the issue of whether the previous rulings of Judges Scullin and Shapre merely held that Plaintiffs were not entitled to the information in question "at that time."

The main problem with Plaintiffs' request, as I see it, is that, because Defendants have not yet attempted to adduce any evidence in support of either a pending dispositive motion or the assertion of an affirmative defense at trial, it is far from clear that such evidence will include the privileged information in question, or that the privileged information will play a *sufficiently prominent* role in that defense to *necessitate* its disclosure to Plaintiffs.  Among the factors often considered by federal courts in evaluating whether or not a party has implicitly waived an applicable privilege are (1) whether the party claiming the privilege is attempting to use it through an "affirmative act," and (2) whether the opposing party would, through the application of the privilege, be denied access to information that is "vital" to its opposition to the affirmative act by the party claiming the privilege.[3]  When Judge Scullin denied that portion of Defendants'

___

identifying any specific facts giving rise to this concern for gunplay].)  However, I note that Plaintiffs argue that Defendants relied on this confidential information also in a portion of their memorandum of law in support of their motion for partial summary judgment, wherein Defendants argue that "[e]vidence collected by the State Police in the hours and days preceding the protest gave defendants good cause for concern" about the possibility of tumultuous and violent conduct.  (Dkt. No. 293, Part 3, at 14 [Defs.' Mem. of Law].)  From my reading of the seven sentences following the referenced sentence, Defendants cite to evidence other than the confidential information in question.  (*Id*. at 14-15.)  As a result, it would not appear that Defendants were relying on the referenced confidential information in that portion of their memorandum of law in support of their partial motion for summary judgment.

[3]        *See, e.g.*, *WLIG-TV, Inc. v. Cablevisions Systems Corp.*, 879 F. Supp. 229, 234 (E.D.N.Y. 1994); *Standard Chartered Bank PLC v. Ayala Intern. Holdings (U.S.) Inc.*, 111

motion for partial summary judgment that was premised on the qualified immunity defense, he did not even deem it necessary to address Defendants' presumed reliance on the confidential information in question (suggesting any reliance by Defendants on such information was minor).[4]

I note that the aforementioned requirement that the information in question be "vital" (to a party's opposition to the affirmative act of the party asserting the privilege) is very similar to the "essential" need requirement contained in the legal standard relied on by Judge Scullin in his Memorandum-Decision and Order of September 21, 2004.  (Dkt. No. 318, at 12-13.)[5]  For this reason, even if I applied the legal standard for overcoming the informer's privilege, I would reach the same conclusion as I do applying the legal standard for "at-issue" waiver.

In the event Defendants attempt to use the privileged information in such a *significant way* at trial, I would suspect that Judge Scullin would either preclude Defendants from doing so or perhaps order Defendants to somehow disclose the information.[6]  However, in light of the possibility that Defendants will not attempt to use the privileged information in that significant

---

F.R.D. 76, 80-81 (S.D.N.Y. 1986); *Cornell v. Bernstein-Macaulay, Inc.*, 407 F. Supp. 420, 422-423 (S.D.N.Y. 1976); *see also Hearn v. Rhay*, 68 F.R.D. 574, 580 (E.D. Wash. 1975).

[4]        (Dkt. Nos. 387 at 27-28, 30-31 [Order of Judge Scullin, dated 3/28/05].)

[5]        *See Matter of Search of Premises Known as 1182 Nassau Averill Park Road*, 203 F. Supp.2d 139, 140-141 (N.D.N.Y. 2002) (Homer, M.J.) ("To overcome the privilege [for statements of informers to law enforcement agencies], the party seeking disclosure has the burden of establishing that the information sought is both relevant and essential to the presentation of his case on the merits . . . and that the need for disclosure outweighs the need for secrecy.") [citations omitted].

[6]        *See, e.g., Jones v. U.S.*, 9 F. Supp.2d 1119, 1138 (D. Neb. 1998) (precluding defendant from using informant privilege at trial in order to support its argument that plaintiff had failed to prove causation sufficient to recover actual damages, because previously "the court prohibited the plaintiffs from discovering the identity of the informant").

way, it appears to me to be premature, unnecessary and contrary to the rationale for the privilege

to either (1) overcome the privilege, or treat it as waived, at this time, or (2) preclude Defendants

from *in any way* relying on the information provided by Investigator Blythe's confidential

sources for the remainder of this lawsuit.[7]

My conclusion–that Plaintiffs have not shown that access to the privileged information in

question is vital to their opposition of Defendants' assertion of its affirmative defense of

qualified immunity–is only bolstered by my reading of the previous rulings of Judges Scullin and

Sharpe on this general issue, which are very similar to my ruling.

As stated earlier, Plaintiffs argue that the previous rulings of Judges Scullin and Sharpe

on this general issue do not control the issue at hand because Judges Scullin and Sharpe merely

held that Plaintiffs did not need the information in question "at that time," and  they do need the

information *at this time*.  As an initial matter, I can find no language in Judge Scullin's

Memorandum-Decision and Order of September 21, 2004, indicating that his decision held

merely that Plaintiffs were not entitled to the information in question "at that time."  For

example, the issue on appeal to Judge Scullin, as articulated by him, was whether then-

Magistrate Judge Sharpe erred when he "denied Plaintiffs' application for further inquiry of

---

[7]       *See*, *e.g.*, *Llyod Lifestyle Ltd. v. Soaring Helmet Corp.*, 06-CV-0349, 2006 WL
753243, at *2 (W.D. Wash. March 23, 2006) (granting defendant's motion to quash deposition
subpoena in part on ground that plaintiff had failed to show that the information sought was not
privileged, explaining, "It is conceivable, given the substance of the parties' dispute, that
[defendant] may eventually raise [defense counsel's] declaration of personal knowledge on its
registration applications as an affirmative defense; it might also eventually argue that [defense
counsel's] knowledge gained from participating in the parties' licensing negotiations supports its
defense.  Absent such actions, the Court is unconvinced that an implied reference to the
applications in generic pleading responses constitutes use of the privilege as a sword and justified
a finding that [defendant] has waived the privilege as to [defense counsel's] potential
testimony.").

Investigator Blythe about confidential sources by interrogatory deposition, written question, or

any other means," after "[a]pplying the informer's privilege" and "conclud[ing] that Plaintiffs

had no need for the information they sought."[8]  Furthermore, Judge Scullin rather clearly ruled

that, because the information sought by Plaintiffs was not "relevant and essential to the merits of

their case," their "need for disclosure does not outweigh Defendants' desire to maintain the

secrecy of the identity of their confidential informants."[9]  Presumably, Plaintiffs would probably

point out that, in issuing his ruling, Judge Sharpe made three statements that at least *appear* to

condition his ruling on the facts and issues of the case at the time of his ruling.[10]  In any event, I

---

[8]      (Dkt. No. 318, at 12 [Memorandum-Decision and Order of Chief Judge Scullin, filed Sept. 21, 2004].)

[9]      (*Id*. at 12-13 [Memorandum-Decision and Order of Chief Judge Scullin, filed Sept. 21, 2004, ruling, in pertinent part, that "Plaintiffs appeal from this [November 17, 2003] determination [of then-Magistrate Judge Sharpe], arguing that then-Magistrate Judge Sharpe erred in denying their request [for his confidential sources] because, without the additional inquiry, they will not be able to rebut Defendants' anticipated motion for summary judgment on qualified immunity grounds. . . .  The Court finds Plaintiffs' argument[] to be without merit. Plaintiffs have failed to show a compelling need for further investigation of Investigator Blythe to justify overriding the informer's privilege.  Although Plaintiffs maintain that further questioning of Investigator Blythe will help them ascertain the credibility of his confidential sources, the credibility of these sources does not turn on the central issues of this case. . . . Moreover, the Court finds that Plaintiffs have not met their burden to prove that the information they seek is relevant and essential to the merits of their case.  Therefore, the need for disclosure does not outweigh Defendants' desire to maintain the secrecy of the identity of their confidential informants.  Accordingly, the Court affirms then-Magistrate Judge Sharpe's [November 17, 2003] ruling with respect to this issue and denies Plaintiffs' motion to compel Investigator Blythe to provide additional information about the confidential sources."].)

[10]      *See Jones v. McMahon*, 98-CV-0374, Hearing Transcript and Order, at 76, 97 (N.D.N.Y. filed Nov. 17, 2003) (Sharpe, M.J.) ("There is no reason[,] *given the issues that are currently extant in this litigation*[,] to require Investigator Blythe to further identify those people he spoke to in advance of the 1997 incident that resulted in the state police response.  He has been sufficiently deposed in that regard and there is no need *on this record* to disclose the identity of those sources. . . .  By no means is any ruling of mine ever designed to foreclose further argument *depending upon what the development of new facts are*.") [emphasis added].

find there is no need to resolve the question of whether the ruling of Judge Sharpe (or Judge Scullin) was indeed so conditioned because the sole relevance of such an inquiry, as far as I see it, would be to determine whether the law-of-the-case doctrine applies.  I do not rely on that doctrine in reaching my conclusion that Plaintiffs have not shown that they need access to the privileged information in question in order to oppose Defendants' assertion of their affirmative defense of qualified immunity.

Rather, I rely on the decisions of Judges Scullin and Sharpe because (1) they are persuasive authority in that they the reach the same conclusion as I do through a similar analysis,[11] and (2) they indicate that the facts and issues before Judges Scullin and Sharpe at the time they made their rulings were very similar to, if not identical to, the facts and issues that are before me at this time, suggesting that there has been no increase in Plaintiffs' asserted need to overcome the privilege in question.  As I understand Plaintiffs' position, they argue that, to the contrary, there has been a change in the facts and issues in this case in that, after they made their first motion to compel the re-deposition of Investigator Blythe (which motion was the subject of the decisions of Judges Sharpe and Scullin), Defendants indeed filed a motion for partial summary judgment that was premised in part on qualified immunity and that cited the privileged

---

[11]     For example, Judge Scullin's conclusion that "Plaintiffs have failed to show a compelling need for further investigation of Investigator Blythe to justify overriding the informer's privilege" is very similar to my conclusion that Plaintiffs have not shown that access to the privileged information in question is "vital" to its opposition of Defendants' anticipated assertion of its affirmative defense of qualified immunity at trial.  The reason for the disparity in the articulation of these conclusions appears to be due to the difference in legal standards relied on.  While I rely on the legal standard for "at-issue" waiver of privileges in general, Judge Scullin relied on the legal standard for overcoming the informer's privilege in particular.  (Dkt. No. 318, at 12.)  *See*, *supra*, note 5 of this Decision and Order.  As I stated earlier, even if I applied the legal standard for overcoming the informer's privilege, I would reach the same conclusion as I do applying the legal standard for "at-issue" waiver.

information in question.  If this is indeed their argument, I must respectfully reject it.

During the motion argument before Judge Sharpe, Ms. Jodi Peikin (as counsel for
Plaintiffs) argued that, "I assume that Investigator's Blythe's testimony, especially that part about
the confidential sources and what they told him prior to the May 18th gathering are going to be a
*centerpiece* of the qualified immunity motion if the defendants make their qualified immunity
summary judgment motion.  They will rely on the fact that Investigator Blythe found out that a
gathering had a potential to be violent, and therefore, people came as they came."[12]  *Those* were
the facts and issues of the case, as the case stood before Judge Sharpe.  After expressly
acknowledging the role that the privileged information would likely play in Defendants' motion
for summary judgment, Judge Sharpe still found Plaintiffs' need for the privileged information to
be insufficient (because any such use of privileged information by Defendants would essentially
be immaterial given the facts and issues of the case).[13]  Furthermore, as described earlier, the role
that the privileged information *actually* played in Defendants' motion for partial summary
judgment appears to have been very limited, suggesting that the role that the privileged
information would play at trial (during the assertion of Defendants' qualified immunity defense)

---

[12]     *See Jones v. McMahon*, 98-CV-0374, Hearing Transcript and Order, at 90
(N.D.N.Y. filed Nov. 17, 2003) (Sharpe, M.J.) [emphasis added].

[13]     *See Jones v. McMahon*, 98-CV-0374, Hearing Transcript and Order, at 93
(N.D.N.Y. filed Nov. 17, 2003) (Sharpe, M.J.) ("I'm sure the plaintiffs are right . . . [that, in
Defendants' motion for summary judgment, the privileged information in question] will support
to some degree the argument by the state that certain things were preceded by facts which were
reasonable, supporting issues of probable cause.  That having been said, this case is not going to
go away on any other issue than a finding of credibility by somebody as to what happened out
there.  They either used excessive force or they didn't.  They either had facts which supported a
particular arrest or [they] didn't. . . .  It's that simple.  That's where this case will ultimately be
resolved.").

would also be very limited.  As a result, a tenable argument exists that the facts and issues of the

case, as they currently exist, indicate an even *lesser* need on the part of Plaintiffs for the

privileged information in question than the need they possessed for that information during the

decisions by Judges Sharpe and Scullin.

Simply stated, I find that Plaintiffs do not have a right to overcome the informer's

privilege and/or law enforcement privilege and obtain the names of the five confidential sources

in question (in part to attempt to show that Investigator Blythe manufactured those sources well

after the incident in question) without more of a showing that Defendants are going to use that

confidential information in a significant way to support the assertion of their qualified immunity

defense at trial.  As a result, I <u>deny</u> without prejudice Plaintiffs' request for an Order either (1)

permitting them to re-depose retired Senior Investigator Dennis J. Blythe for the limited purpose

of discovering information regarding the identity and reliability of five confidential sources about

whom he testified at his initial deposition, or (2) precluding Defendants from relying on the

information provided by Investigator Blythe's confidential sources for the remainder of this

lawsuit.

## II.     Request for Order Either Declaring that Martin J. Williams is a "Proper" Defendant in Plaintiffs' Second Amended Complaint or Permitting Plaintiffs to File a Third Amended Complaint Naming Him as a Defendant

Plaintiffs request an Order either (1) declaring that Martin J. Williams is a "proper"

Defendant in Plaintiffs' Second Amended Complaint or (2) permitting Plaintiffs to file a Third

Amended Complaint naming Mr. Williams as a Defendant.  (Dkt. No. 428, Part 1, at 10-11.)

I construe Defendants' opposition to Plaintiffs' *initial* request (i.e., for an Order declaring

that Martin J. Williams is a "proper" Defendant in Plaintiffs' Second Amended Complaint) as

10

being premised on two related but somewhat distinct grounds: (1) Plaintiffs' Second Amended Complaint is devoid of sufficient factual allegations against Martin J. Williams, i.e., those factual allegations that would be necessary to give him *fair notice* of the nature of Plaintiffs' claims against him under Rule 8 of the Federal Rules of Civil Procedure; and (2) that the Second Amended Complaint does not allege any facts indicating the personal involvement of Mr. Williams in the constitutional violations alleged, which is a requirement to state a claim under 42 U.S.C. § 1983.  Defendants oppose Plaintiffs' *alternative* request (i.e., for an Order permitting Plaintiffs to file a Third Amended Complaint naming him as a Defendant) on the ground that such a request was already denied by Judge Scullin on April 20, 2005, in connection with a different proposed amended pleading.

Plaintiffs reply that (1) various pieces of evidence demonstrate that Mr. Williams was involved in the incident in question, on May 18, 1997, and (2) although Plaintiffs' Second Amended Complaint does not contain specific allegations relating to Mr. Williams, their Amended Complaint does contain such allegations, in six paragraphs spanning one and a half pages, which placed Mr. Williams on notice, in or about November of 1998, of Plaintiffs' allegations against him.

**A.      Plaintiffs' Initial Request for Declaratory Order**

With regard to Plaintiffs' initial request (i.e., for an Order declaring that Martin J. Williams is a "proper defendant in this case"), even though Defendants responded to this request as it was articulated, I find this request to be fatally flawed in that it misperceives the current posture of the case.  Plaintiffs have filed a Second Amended Complaint whose caption and whose subtitle to its "First Claim for Relief" expressly refer to Mr. Williams but whose body

11

does not appear to do so in any of its 613 paragraphs.  (*See generally* Dkt. No. 149, Parts 1-3.)
Under the circumstances, I find that Plaintiffs have *named* Mr. Williams as a Defendant in their
Second Amended Complaint.[14]  Furthermore, Defendant Williams is considered by the Court to
be a "proper" Defendant unless and until Defendants make some sort of dispositive motion with
regard to Plaintiffs' claims against Defendant Williams, or the Court exercises its power to *sua
sponte* review Plaintiffs' claims against him, for example, pursuant to Rule 12(h)(3) of the
Federal Rules of Civil Procedure, or pursuant to the authority recognized in *Salahuddin v.
Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

However, this literal interpretation of Plaintiffs' request ignores the obvious intent of the
request, which is to seek an adjudication of the issue of whether they have stated a claim against
Defendant Williams under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Under Rule 57
of the Federal Rules of Civil Procedure, and 28 U.S.C. § 2201, such an issue is not properly
raised through, and decided on, a motion for a declaratory order.[15]  Rather, the issue is properly

---

[14]     *See* Fed. R. Civ. P. 10(a) ("In the complaint the title of the action shall include the
names of all the parties . . . ."); Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do
substantial justice."); *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005) ("*All* complaints must
be read liberally [not just *pro se* complaints] . . . .") [emphasis in original]; *see, e.g.*, *Jones v.
State of La. Through Bd. of Tr. for State Coll. and Univ.*, 764 F.2d 1183, 1185 (5th Cir. 1985)
("We are of the opinion that . . . [the] listing [of a person in the caption of a complaint] is
sufficient to confer party status in [a] case," even where, as here, the person in question was "not
named in the paragraph in the body of the complaint that lists the defendants.").

[15]     *See Int'l Bhd. of Teamsters v. E. Conf. of Teamsters*, 160 F.R.D. 452, 455-456
(S.D.N.Y. 1995) ("[P]laintiffs fail to appreciate that when the Federal Rules of Civil Procedure
specifically address a subject, a litigant is not free to disregard the requirements that the Rules
impose.  Thus, for example, a litigant seeking summary judgment must satisfy the requirements
specified in Rule 56, and such a litigant cannot avoid these requirements merely by giving the
motion a new name.  In the instant case, plaintiffs have moved this Court for an order declaring
that plaintiffs have certain rights to the funds in question, and the Federal Rules have established
a procedure for a litigant who seeks such a declaration: an action for a declaratory judgment

raised through, and decided on, a motion to dismiss for failure to state a claim under Rule

12(b)(6).  Under the circumstances, I will *sua sponte* construe the parties' submissions as a

motion to dismiss for failure to state a claim, and a response thereto.[16]

In addition to being in the interest of justice, this construction of the parties' submissions

is in accord with the parties' perceived intent.  I note that the current issue facing the Court

originally arose out of a request by defense counsel, on December 12, 2006, that the Court

dismiss Plaintiffs' Second Amended Complaint as it relates to Mr. Williams and deny any

request by Plaintiffs to file a Third Amended Complaint containing factual allegations against

Mr. Williams.  (Dkt. No. 416, at 3.)  On February 23, 2007, I denied that request without

prejudice, directing counsel to confer in good faith in an attempt to resolve the issue, and

instructing them that, if they were unable to resolve the dispute, I would address it in a

teleconference between counsel and the Court.  (Dkt. No. 423, at 4.)  Subsequently, counsel were

unable to resolve the dispute.  On June 5, 2007, I conducted that teleconference and reserved

decision on the issue, directing counsel to submit letter briefs in support of their positions.

Plaintiffs' current request followed.

As an initial matter, it is important to note that motions to dismiss for failure to state a

claim may be based on one or both of two related but somewhat distinct grounds: (1) a challenge

to the "sufficiency of the pleading" under Rule 8(a)(2); or (2) a challenge to the legal

---

pursuant to Rule 57. . . .  Because an action for a declaratory judgment is an ordinary civil action,
a party may not make a *motion* for declaratory relief, but rather, the party must bring an *action*
for declaratory judgment.") [emphasis in original].

[16]      *See, e.g.*, *Int'l Bhd. of Teamsters*, 160 F.R.D. at 455-456 (construing improperly
styled "motion for declaratory order" as motion for summary judgment).

cognizability of the claim.[17]  Here, as indicated above, I construe Defendants' opposition to

Plaintiffs' first request as consisting of both types of challenges to Plaintiffs' Second Amended

Complaint: (1) a challenge to the sufficiency of the pleading (in that the pleading does not

contain those factual allegations that would be necessary to give Defendant Williams fair notice

of the nature of Plaintiffs' claims against him); and (2) a challenge to the legal cognizability of

the claim (in that, by failing to allege facts indicating the personal involvement of Defendant

Williams in the constitutional violations alleged, Plaintiffs have failed to fulfill an essential

requirement to state a claim against Defendant Williams under 42 U.S.C. § 1983).

### 1.   Challenge to Sufficiency of Pleading

Recently, the Supreme Court clarified the nature of the "fair notice" pleading standard

that governs Rule 8(a)(2) of the Federal Rules of Civil Procedure, under *Conley v. Gibson*, 355

U.S. 41, 47 (1957).  Specifically, the Supreme Court held,

---

[17]    *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations
give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. .
. . *In addition*, they state claims upon which relief could be granted under Title VII and the
ADEA.") [emphasis added]; *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a
critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule
12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Kittay v. Kornstein*,
230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s
requirement of stating a cognizable claim and Rule 8[a][2]'s requirement of disclosing sufficient
information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab.
Litig.*, 2005 U.S. Dist. LEXIS 6686 (S.D.N.Y. Apr. 20, 2005) ("Although Rule 8 does not require
plaintiffs to plead a theory of causation [in order to give defendant fair notice of their claim], it
does not protect a legally insufficient claim.") [citation omitted]; *Util. Metal Research &
Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, *4-5 (E.D.N.Y. Nov. 18,
2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6]
and the sufficiency of the complaint under Rule 8); *accord*, *Straker v. Metro Trans. Auth.*, 331 F.
Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist.
LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a
Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8(a), and the
other aimed at the legal sufficiency of the claims).

> While a complaint . . . does not need detailed factual allegations, . . . a
> plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to
> relief' requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do. . . .   Factual
> allegations must be enough to raise a right to relief above the
> speculative level, . . . on the assumption that all the allegations in the
> complaint are true (even if doubtful in fact) . . . .

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-1965 (2007).  Here, I find that the factual

allegations of Plaintiffs' Second Amended Complaint, even when assumed to be true, are not

enough to raise a right to relief (pursuant to any claim against Defendant Williams) above a

speculative level.  As stated earlier, although Plaintiffs name Martin J. Williams as a Defendant

in the caption of their Second Amended Complaint and in the subtitle to their "First Claim for

Relief," I cannot find his name in any of the 613 paragraphs of the body of that amended

pleading.  (*See generally* Dkt. No. 149, Parts 1-3.)

Plaintiffs essentially argue that, despite the aforementioned omission of factual

allegations against Defendant Williams from their Second Amended Complaint, Defendant

Williams had "fair notice" of Plaintiffs intended factual allegations against him because (1)

various pieces of evidence demonstrate that Defendant Williams was involved in the incident in

question, on May 18, 1997, and (2) Plaintiffs' Amended Complaint contained Plaintiffs' factual

allegations against him.  (Dkt. No. 428, Part 1, at 10-11.)  I disagree.

With respect to Plaintiffs' reliance on various pieces of evidence allegedly demonstrating

that Defendant Williams was involved in the incident in question, on May 18, 1997, I

acknowledge that such evidence may very well actually exist.  However, I have difficulty

considering it under the circumstances.  As I explained above, the legal standard that governs

Plaintiffs' initial request is not a Rule 56 summary judgment standard (in which record evidence

15

is considered) but a Rule 12(b)(6) motion to dismiss standard (in which merely the complaint and any attachments thereto are considered, unless the complaint has been authored by a *pro se* plaintiff, which this pleading was not).[18]  Although I have found a handful of cases from within the Seventh Circuit and the District of Columbia Circuit holding that courts may look beyond the pleadings to pretrial conduct and communications between the parties when deciding whether a complaint has given a defendant "fair notice" of the plaintiff's claims against him,[19] I have found no cases from within the Second Circuit citing those cases.

Even if I were to consider the referenced pieces of evidence in determining whether Defendant Williams had notice of Plaintiffs' claims against him, I would conclude that such notice was not "fair," or, using the terminology recently used by the Supreme Court in *Twombly*, I would conclude that the notice was not sufficient to raise Plaintiffs' right to relief against Defendant Williams above a "speculative level."  This is because Defendants have argued (and I

---

[18]     *See Kopec v. Coughlin*, 922 F.2d 152, 153 (2d Cir. 1991) ("We consider only the facts alleged in the amended complaint [when deciding a motion to dismiss]."); *Ronzani v. Sanofi S.A.*, 899 F.3d 195, 196 (2d Cir. 1990) ("In reviewing the sufficiency of the complaint [on a motion to dismiss], we will consider only the facts alleged in the amended complaint and any documents attached thereto as exhibits or incorporated by reference."); *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) ("On a motion to dismiss, the district court must limit itself to a consideration of the facts alleged on the face of the complaint . . . and to any documents attached as exhibits or incorporated by reference . . . .") [citations omitted].  Indeed, when courts consider documents outside the four corners of the complaint, they effectively convert a motion to dismiss into a motion for summary judgment.  *See, e.g., Kopec*, 922 F.2d at 153.

[19]     *See Bob Willow Motors, Inc. v. Gen. Motors Corp.*, 872 F.2d 788, 791-792 (7th Cir. 1989); *Sundstrand Corp. v. Standard Kollsman Indus., Inc.*, 488 F.2d 807, 811 (7th Cir. 1973); *In re Consolidated Indus. Corp.*, 292 B.R. 354, 358 (N.D. Ind. Dec. 9, 2002); *Alaska Airlines v. Austin*, 90-CV-2879, 1992 WL 358840, at *2 & n.2 (D.D.C. Nov. 19, 1992); *Berman v. Midwesco, Inc.*, 90-CV-7065, 1992 WL 59109, at *2 (N.D. Ill. March 13, 1992); *Mueller v. Ameritech Information Sys., Inc.*, 92-CV-3429, 1992 WL 48014, at *2 (N.D. Ill. March 3, 1992); *Augenstein v. Nat'l Student Marketing Corp.*, No. 2408-72, 1982 WL 1368, at *4 & n.13 (D.D.C. Nov. 24, 1982).

have no reason to doubt) that, for some time now, they have disputed the personal involvement

of Defendant Williams in the constitutional violations alleged.[20]  Thus, for all Defendant

Williams knew, Plaintiffs' withdrawal, in their Second Amended Complaint, of their previous

factual allegations against him could have been not due to a mistake (as Plaintiffs assert, in Dkt.

No. 418, Part 1, at 16) but due to an intentional act, in light of (1) Defendants' argument that

Defendant Williams was not personally involved in the constitutional violations alleged, and/or

(2) the duties imposed on Plaintiffs' counsel pursuant to Rule 11 of the Federal Rules of Civil

Procedure.  Furthermore, I find that, under the circumstances, this reasonable uncertainty

(regarding whether Plaintiffs were, when they filed their Second Amended Complaint on October

25, 1999, continuing to assert factual allegations against Defendant Williams) caused Defendant

Williams at least some prejudice, forcing him to either (1) spend the effort to conduct discovery

and motion practice regarding the speculative factual allegations against him or (2) gamble to his

possible peril that no such factual allegations actually existed.[21]  For example, I note that this

---

[20]     (*See*, *e.g.*, Dkt. No. 416, at 3 [Letter Brief by Defendants, filed 12/13/06,
referencing letter from defense counsel to Plaintiffs' counsel dated 12/20/00 informing Plaintiffs
that "it was the State defendants' position that Martin J. Williams is not a proper defendant in
this case," and also referencing Stipulation of Dismissal regarding Defendant Williams that was
sent to Plaintiffs on 4/11/06].)

[21]     As Judge Scullin aptly stated in a previous Memorandum-Decision and Order in
this case, "Defendant Martin J. Williams is not addressed in that portion of Plaintiffs' second
amended complaint [which is entitled 'Factual Allegations As to Each Defendant'].  Presumably,
Plaintiffs would . . . argue this was due to inadvertence.  However, a defendant should not be in a
position of having to guess which of a plaintiff's inadvertent inclusions or exclusions have legal
effect."  (Dkt. No. 395, at 6, n.6 [Mem.-Decision and Order of Judge Scullin, filed 4/20/05].)
I note that one of the purposes of the notice pleading standard is to permit an adverse
party an opportunity to prepare an adequate defense.  *See Flores v. Bessereau*, 98-CV-0228, 1998
WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.) ("The purpose of [Rule 8 of the Federal
Rules of Civil Procedure] is to give fair notice of the claim being asserted so as to permit the
adverse party the opportunity to file a responsive answer, prepare an adequate defense and

confusion actually resulted in defense counsel futilely preparing and sending to Plaintiffs' counsel on April 11, 2006, a Stipulation of Dismissal with regard to Plaintiffs' claim against Defendant Williams.[22]

With regard to Plaintiffs' reliance on Plaintiffs' factual allegations against Defendant Williams in their prior Amended Complaint, I acknowledge that such reliance, in appropriate circumstances, *may* have some legal justification. Specifically, approximately two years ago, the Second Circuit issued a decision in which they considered a plaintiff's original complaint and first amended complaint in assessing whether his second amended pleading gave defendants "fair notice" of his claims against defendants. *See Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). As an initial matter, it is unclear whether the Second Circuit so considered the plaintiff's first two pleadings merely because he was proceeding *pro se*. *See Phillips*, 408 F.3d at 128 ("[A]s low as the requirements are for a complaint drafted by competent counsel, we hold *pro se* complaints to an even lower standard."). If so, it would explain why, in so ruling, the Second

_____

determine whether the doctrine of *res judicata* is applicable.") [citations omitted]; *see also Herbert v. Syracuse, New York Welfare Off.*, 06-CV-0848, 2006 WL 2794400, at *1 (N.D.N.Y. Sept. 25, 2006) (Scullin, J.) ("A complaint that fails to comply with [Rules 8 and 10 of the Federal Rules of Civil Procedure] presents too heavy a burden for the defendants in shaping a comprehensive defense, provides no meaningful basis for the court to assess the sufficiency of the plaintiff's claims, and is properly subject to dismissal."); *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (a complaint that fails to comply with Rule 8's notice-pleading standard "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims"), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion cited not as precedential authority, but merely to show the case's subsequent history, consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit).

[22]    (*See*, *e.g.*, Dkt. No. 416, at 3 [Letter Brief by Defendants, filed 12/13/06, referencing Stipulation of Dismissal regarding Defendant Williams that was sent to Plaintiffs' counsel on 4/11/06, which Stipulation Plaintiffs' counsel never returned].)

Circuit implicitly made an exception to the longstanding rule that the filing of an amended pleading ordinarily renders a prior pleading a nullity for all legal purposes.[23]  Even if this ruling in *Phillips* did not turn on the plaintiff's special status as a *pro se* litigant (which special status Plaintiffs in the current action do not enjoy), I would find that *Phillips* is distinguishable from our case on two alternative grounds.

First, our case involves only one prior pleading that allegedly gave a defendant notice of the factual allegations against him, while *Phillips* involved two such prior pleadings.[24]  More importantly, in our case, any such notice to Defendant Williams that may or may not have been gleaned by Plaintiffs' Amended Complaint was muddled by the fact that, as stated earlier, Defendants have, for some time now, disputed the personal involvement of Defendant Williams in the constitutional violations alleged.  Thus, at the very least, there was reasonable confusion as to whether Plaintiffs' omission of factual allegations regarding Defendant Williams from their Second Amended Complaint was intentional rather than a mere mistake.  For all of these reasons, any such notice provided to Defendant Williams was not the sort of "fair" notice required by Rule 8.  Rather, Plaintiffs' right to relief against Defendant Williams was merely "speculative."

Second, the ruling in question from *Phillips* appears to have been premised, ultimately,

---

[23]    *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668-669 (2d Cir. 1977) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") [citations omitted], *cert. denied*, 434 U.S. 1014 (1978), *accord*, *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *see also* N.D.N.Y. L.R. 7.1(a)(4) ("Except as the Court otherwise provides, the proposed amended pleading . . . will supersede the original pleading in all respects.").

[24]    In particular, I can find no reference to "Martin J. Williams" in Plaintiffs' original Complaint in this action, although I do find some references to a "Mark S. Williams."  (*See generally* Dkt. No. 1.)

on the principle that a plaintiff's complaint should not be dismissed unless it is clear that the

plaintiff would not be entitled to relief under "any set of facts" that could be proved consistent

with the allegations.  *Phillips*, 408 F.3d at 127 (quoting *Boddie v. Schnieder*, 105 F.3d 857, 860

[2d Cir. 1997]).  This "any set of facts" language was clearly derived from the "no set of facts"

language first used in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).[25]  Recently, the Supreme

Court unequivocally "retire[d]" that language.[26]  Thus, it is questionable whether the ruling in

question from *Phillips* is even still good law.

       Finally, I note that, earlier in this proceeding, Judge Scullin reached a similar conclusion

regarding lack of fair notice with regard to Plaintiffs' factual allegations (or lack thereof) against

Defendant Gregory Eberl.  (Dkt. No. 375, at 8, n.9 [Mem.-Decision and Order of Judge Scullin,

filed 4/20/05].)  As Judge Scullin stated with regard to yet another set of insufficient allegations

in Plaintiffs' Second Amended Complaint, "[T]he Court cannot replead Plaintiffs' case for

them."  (*Id.* at 10.)

─────────────────────

[25]     *See Phillips*, 408 F.3d at 127 (expressly relying on *Boddie v. Schnieder*, 105 F.3d 857, 860 [2d Cir. 1997], which expressly relied on *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5 [2d Cir. 1996], which expressly relied on *I Meyer Pincus & Assoc. v. Oppenheimer & Co.*, 936 F.2d 759, 762 [2d Cir. 1991], which expressly relied on *Hishon v. King & Spalding*, 467 U.S. 69, 73 [1984], which expressly relied on *Conley v. Gibson*, 355 U.S. 41, 45-46 [1957]).

[26]     *See Twombly*, 127 S.Ct. at 1969 ("[T]he passage so often quoted [from *Conley* regarding 'no set of facts'] fails to mention [the] understanding on the part of the Court [regarding the minimum standard for adequate pleading], and after puzzling the profession for 50 years, this famous observation has earned its retirement.  The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. . . .  *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival.").

### 2.      Challenge to Legal Cognizability of Claim

Defense counsel is also correct that a defendant's personal involvement in alleged

unlawful conduct is a prerequisite for a finding of liability in a claim pursuant to 42 U.S.C. §

1983.  (Dkt. No. 427, at 2 [citing *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.), *cert.*

*denied*, 434 U.S. 1087 (1978)].)  Because personal involvement is a requirement of a viable

claim under Section 1983, a plaintiff who fails to allege facts "plausibly suggesting"[27] such

personal involvement has failed to assert a claim that is legally cognizable under Rule 12(b)(6) of

the Federal Rules of Civil Procedure.  *See, e.g., Gill v. Mooney*, 824 F.2d 192, 194, 196 (2d Cir.

1987) (affirming district court's grant of defendants' Rule 12[b][6]  motion to dismiss for failure

to allege facts indicating personal involvement of prison superintendent in constitutional

violations alleged) [citations omitted]).

As stated earlier, although Plaintiffs name Martin J. Williams as a Defendant in the

caption of their Second Amended Complaint and in the subtitle to their "First Claim for Relief," I

cannot find his name in any of the 613 paragraphs of the body of that amended pleading.  (*See*

*generally* Dkt. No. 149, Parts 1-3.)  Because Plaintiffs' Second Amended Complaint contains no

factual allegations whatsoever against Defendant Williams, Plaintiffs have not alleged facts from

which a fact-finder could conclude that Defendant Williams was personally involved in the

---

[27]      *See Twombly*, 127 S.Ct. at 1965-1966 ("In applying these general standards to a . .
. claim [under Section 1 of the Sherman Act], we hold that stating such a claim requires a
complaint with enough factual matter (taken as true) to *suggest* that an agreement was made.
Asking for *plausible* grounds to infer an agreement does not impose a probability requirement at
the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery
will reveal evidence of illegal agreement. . . .  The need at the pleading stage for allegations
*plausibly suggesting* (not merely consistent with) agreement reflects the threshold requirement of
Rule 8(a)(2) that the 'plain statement' possesses enough heft to 'sho[w] that the pleader is
entitled to relief.'") [emphasis added].

constitutional violations alleged.  *See*, *e.g.*, *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d

Cir. 1987) ("Initially, we hold that appellants' claims [pursuant to 42 U.S.C. § 1983] against

defendants herein cannot stand.  Although the caption of appellants' complaint names as

defendants Benjamin Ward, Police Commissioner of the City of New York, and Anthony

Savarese, a sergeant in the New York City Police Department, the complaint is entirely devoid of

any allegations of their personal involvement in [the constitutional violations alleged].").

> **B.     Plaintiffs' Alternative Request for Leave to File a Third Amended Complaint**

With regard to Plaintiffs' alternative request (i.e., for an Order granting them leave to file

a Third Amended Complaint), I deny that motion on several grounds.

Motions to amend pleadings to add new parties are governed by Rule 15 of the Federal

Rules of Civil Procedure, which states that leave to amend "shall be freely given when justice so

requires."[28]  Fed. R. Civ. P. 15(a).  Elaborating on this standard, the Supreme Court has explained

what this "freely given" term means:

> In the absence of any apparent or declared reason [to not grant leave to
> amend] -- such as undue delay, bad faith or dilatory motive on the part
> of the movant, repeated failure to cure deficiencies by amendments
> previously allowed, undue prejudice to the opposing party by virtue of
> allowance of the amendment, futility of amendment, etc. -- the leave
> sought should . . . be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

---

[28]     Although Rule 21 of the Federal Rules of Civil Procedure governs the addition of
new parties to an action, a motion to add a party under Rule 21 is guided by the same liberal
standard as is a motion to amend under Rule 15.  *See U.S. v. Chilstead Building Co.*, 96-CV-
0641, 1997 U.S. Dist. LEXIS 18134, at *2 (N.D.N.Y.  Nov. 7, 1997) (McAvoy, C.J.) [citations
omitted]; *Smith v. P.O. Canine Dog Chas*, 02-CV-6240, 2004 WL 2202564, at *12 n.11
(S.D.N.Y. Sept. 28, 2004); *Clarke v. Fonix Corp.*, 98-CV-6116, 1999 WL 105031, at *6
(S.D.N.Y. Mar. 1, 1999); *Soler v. G & U, Inc.*, 86 F.R.D. 524, 527-28 (S.D.N.Y. 1980); *Fair
Hous. Dev. Fund Corp. v. Burke*, 55 F.R.D. 414, 419 (E.D.N.Y. 1972).

Here, I find that sufficient reason exists to deny Plaintiffs' request–specifically, (1) Plaintiffs' undue delay in filing this motion, (2) their repeated failures to cure the deficiency in question, and (3) the undue prejudice to Defendants that would occur if Plaintiffs' request were granted.

First, Plaintiffs have unduly delayed in filing the current request.  The deadline for the filing of amended pleadings expired more than **seven-and-a-half years ago**.  (Dkt. No. 146 [Order of Judge Scullin, filed 8/23/99, setting deadline for filing of amended pleadings as 10/22/99]; *see also* Dkt. No. 395, at 7, n.7 [Order of Judge Scullin, filed 4/20/05, stating that "any motion to amend would be over five years late"].)  I note that, because Plaintiffs have not shown good cause for extending that filing deadline for amended pleadings, their request may be denied on that ground alone.[29]  I am not sure why Plaintiffs have waited so long to file the current request to amend.  They had actual notice that their Amended Complaint failed to contain any factual allegations against Defendant Williams at least by April 20, 2005, when Judge Scullin informed them, in a Memorandum-Decision and Order, that "Defendant Martin J. Williams is not addressed in that portion of Plaintiffs' second amended complaint [which is entitled 'Factual Allegations As to Each Defendant']."  (Dkt. No. 395, at 6, n.6 [Mem.-Decision and Order of Judge Scullin, filed 4/20/05.)[30]  Indeed, it is conceivable that Plaintiffs were aware of the

---

[29]      *See* Fed. R. Civ. P. 16(b)(8) ("A schedule shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge."); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause.").

[30]      Moreover, it appears that they were on at least *constructive* notice that their Amended Complaint failed to contain any factual allegations against Defendant Williams by

omissions regarding Defendant Williams as early as December 20, 1999, when defense counsel

wrote them, stating that it was the State defendants' position that "Martin J. Williams is not a

proper defendant in this case."[31]

Second, Plaintiffs have repeatedly failed to cure the deficiency in question. As Judge

Scullin stated in a previous Memorandum-Decision and Order in this case, "[T]he Court has

already twice given Plaintiffs leave to amend their pleadings . . . ." (Dkt. No. 395, at 7, n.7

[Mem.-Decision and Order of Judge Scullin, filed 4/20/05.) Specifically, Plaintiffs were able to

file amended pleadings on November 24, 1998, and October 25, 1999. (Dkt. Nos. 65, 149.)

Third, Defendants would experience undue prejudice if Plaintiffs' request were granted.

Defendants have already moved for dismissal and partial summary judgment, and those motions

have been decided by the Court. Because Plaintiffs have waited so long to make the current

request, if the Court were to grant that request, Defendants presumably would have to file an

Amended Answer, file an Amended Crossclaim, conduct additional discovery, file yet another

dispositive motion (regarding Plaintiffs' claims against Defendant Williams), and wait for the

---

April *4*, 2005, when they requested that Judge Scullin change a few sentences in a previous
Memorandum-Decision and Order filed by him on the ground that Plaintiffs had inadvertently
omitted from their Second Amended Complaint certain factual allegations regarding various
Defendants (other than Defendant Williams). (*See* Dkt. No. 388, Part 1, at 3; Dkt. No. 391, at 1-
2.)

[31]     (*See*, *e.g.*, Dkt. No. 416, at 3 [Letter Brief by Defendants, filed 12/13/06,
referencing letter from defense counsel to Plaintiffs' counsel dated 12/20/00 informing Plaintiffs
that "it was the State defendants' position that Martin J. Williams is not a proper defendant in
this case," and also referencing Stipulation of Dismissal regarding Defendant Williams that was
sent to Plaintiffs on 4/11/06].)

Court to decide that motion.[32]  A similar conclusion of undue prejudice was reached by Judge

Scullin in a previous Memorandum-Decision and Order in this case.[33]

 Alternatively, I deny Plaintiffs' motion to amend on the ground that their request does not

constitute a proper motion to amend their pleadings.  Local Rule 7.1(a)(4) provides that

> [a]n unsigned copy of the proposed amended pleading must be
> attached to a motion brought under Fed. R. Civ. P. 14, 15, 19-22.
> Except as the Court provides, the proposed amended pleading must be
> a complete pleading, which will supersede the original pleading in all
> respects.  No portion of the prior pleading shall be incorporated into
> the proposed amended pleading by reference.

N.D.N.Y. L.R. 7.1(a)(4).  I note that, when deciding a previous motion to amend filed by

Plaintiffs, Judge Scullin denied that motion on these same alternative grounds.  (Dkt. No. 375, at

5 [Mem.-Decision and Order of Judge Scullin, filed 4/20/05].)

 For all these reasons, I deny Plaintiffs' request for a declaratory order, I deny Plaintiffs'

request for leave to file a Third Amended Complaint, and I recommend that the Court dismiss

Plaintiffs' claims against Defendant Williams for failure to state a claim under Rules 8 and 12 of

---

[32] *See, e.g., Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (affirming denial of leave to amend because permitting plaintiff to allege a "new set of operative facts" would have been "especially prejudicial [to the defendant] given the fact that discovery had already been completed and [defendant] had already filed a motion for summary judgment").

[33] (Dkt. No. 395, at 7, n.7 [Mem.-Decision and Order of Judge Scullin, filed 4/20/05, stating, "Given that any motion to amend by Plaintiffs would be over five years late, that the Court has already twice given Plaintiffs leave to amend their pleadings, that this is a large case in which it is particularly important for the caption to give Defendants accurate notice of who the parties are, and that Plaintiffs have previously dropped many persons as Defendants, the Court concludes that Defendants would be unduly prejudiced if the Court were to allow Plaintiffs to amend their pleadings a third time."].)

the Federal Rules of Civil Procedure.[34]

**III.    Request for an Order Permitting Plaintiffs to Conduct the Deposition of Non-Party Lt. Frank DeGennaro Regarding the "Injury to Prisoner" Investigations Conducted by the New York State Police, and the Depositions of the Eight Non-Party New York State Police Investigators Who Conducted Those Investigations if Defendants Indicate an Intent to Rely on Those Investigations**

Plaintiffs request an Order permitting them to conduct the depositions of (1) non-party Lt. Frank DeGennaro regarding the "injury to prisoner" investigations conducted by the New York State Police following the occurrence of the incident in question on May 18, 1997, and (2) some or all of the eight other non-party New York State Police Investigators who conducted those investigations in the event it becomes apparent that Defendants intend, in a future motion or at trial, to rely on information collected by those investigators. (Dkt. No. 428, Part 1, at 8-9.)

Defendants oppose this request on essentially three grounds: (1) Plaintiffs do not need much of the information they seek because they already have the "factual portions" of the five "injury to prisoner" reports relating to the incident in question on May 18, 1997, and because

---

[34]    I find that I have the authority to deny Plaintiffs' motion to amend without issuing a report-recommendation. *See* 28 U.S.C. § 636(b)(1)(A) (providing that a district judge "may designate a magistrate to hear and determine any pretrial matter," with certain enumerated exceptions not relevant here); Fed. R. Civ. P. 72(a) (providing that "[a] magistrate judge to whom a pretrial matter not dispositive of a claim or defense of a party is referred to hear and determine shall . . . when appropriate enter into the record a written order setting forth the disposition of the matter."). This conclusion is supported by the overwhelming weight of cases from the Second Circuit and from this Court. For example, I note that, in a fairly recent appeal in which the appellant challenged the authority of a magistrate judge to deny a motion to amend without issuing a report-recommendation, the Second Circuit rejected the argument based, in part, on *Maurice v. State Farm Mut. Auto. Ins. Co.*, 235 F.3d 7, 9 n.2 (1st Cir. 2000). *Marsh v. Sheriff of Cayuga County*, Civ. No. 99-368, 2002 WL 1159631 (2d Cir. May 31, 2002). Although this summary affirmance by the Second Circuit is not itself precedential authority, *see* Rules of the United States Court of Appeals for the Second Circuit, § 0.23, it clearly acknowledges the persuasive effect of *Maurice* in this Circuit. *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmance for similar purpose).

they have already deposed all but three of the named Defendants in this case; (2) the remaining information that Plaintiffs seek has been ruled to be privileged by Judge Sharpe on November 17, 2003; and (3) Plaintiffs do not have a compelling need for that privileged information (i.e., a need that is sufficient to overcome the privilege) because the information is not relevant to Plaintiffs' claims in this case.  (Dkt. No. 427, at 3.)

Plaintiffs reply with three arguments.  First, they argue that the "factual portions" of the five "injury to prisoner" reports referenced by Defendants, and the deposition testimony of the named Defendants in this case, do not, in fact, regard how the "injury to prisoner" investigations were directed and conducted.  (Dkt. No. 428, Part 1, at 9.)  Second, Plaintiffs argue that they need the information in question because (1) the referenced "injury to prisoner" investigations were part of the New York State Police's alleged "cover-up" of their improper actions taken on May 18, 1997, and thus information about how those investigations were directed and conducted could lead to admissible evidence bearing on the reasonableness of Defendants' actions on May 18, 1997, and (2) the investigations "relate to injuries that certain Plaintiffs received on May 18, 1997 at the hands of the troopers, and information collected pertaining to such injuries may be relevant to damages."  (*Id.* at 8-9.)  Third, Plaintiffs argue that, indeed, on February 23, 2007, the Court ruled that the New York State Police's internal investigators "clearly could have" information relevant to the May 18, 1997 incident, regardless of whether that information was relevant to Plaintiffs' stated claims in this case.  (*Id.* at 8.)

I believe that a proper analysis of this issue starts with an analysis of what, if any, privilege applies to the information possessed by the investigators in question.  Unfortunately, I cannot conduct a thorough such analysis on the record before me.  On November 17, 2003, Judge

Sharpe ruled that, apparently with respect to the "synopsis and conclusion" sections of the five "injury to prisoner" reports referenced above by Defendants and a "cover memorandum" from Defendant Parmley regarding the reports, "[i]t is my evaluation that all of the materials are either protected by the [deliberative process privilege] or are irrelevant to the issues raised insofar as issues of qualified immunity are concerned." *Jones v. McMahon*, 98-CV-0374, Hearing Transcript and Order, at 33 (N.D.N.Y. filed Nov. 17, 2003) (Sharpe, M.J.) [emphasis added].  In affirming Judge Sharpe's ruling, Judge Scullin, on September 21, 2004, appeared to indicate that the various materials ruled on by Judge Sharpe did not consist merely of the "synopsis and conclusion" sections of the five "injury to prisoner" reports and the "cover memorandum" referenced above but extended to several other documents.  (Dkt. No. 318, at 8-9, n.3)  Because I do not have the documents referenced by Judge Scullin for an *in camera* review, and because I do not even know the names of the eight non-parties that Plaintiffs are reserving the right to depose, I cannot know whether any of the information sought by Plaintiffs is, in substance, the same information ruled to be privileged or irrelevant by Judge Sharpe.

Of course, even without relying on the rulings of Judges Sharpe and Scullin, it is theoretically possible for me to determine whether the deliberative-process privilege protects disclosure of the information sought by Plaintiffs.  Specifically, it is conceivable to me that the information sought–which regards, in part, how certain police investigations were *directed* as a result of a *special policy* to allegedly "cover-up" the results of Defendants' conduct during the incident on May 18, 1997–falls within the parameters of the deliberative process privilege.  (*See* Dkt. No. 318, at 6-8 [Mem.-Decision and Order of Judge Scullin, filed 9/21/04, describing legal standard for application of deliberative process privilege].)  However, given the sensitive nature

of the information at issue, I believe that it would be necessary for me to hear the proffered

deposition testimony in question in chambers before properly determining whether the

information they possess is or is not protected by the privilege.  *See, e.g., Brown v. Middaugh,*

96-CV-1097, 1999 U.S. Dist. LEXIS 5764, at *3-4 (N.D.N.Y. Apr. 21, 1999) (Munson, J.)

("Given the sensitive nature of these files, which pertain to internal investigations of Oneida

County corrections officers and deputies, the court examined them *in camera*.").[35]

  Moreover, regardless of whether the privilege applies, and despite my ruling on February

23, 2007, I have trouble finding that Plaintiffs have shown good cause to believe that all of the

information that they seek is *relevant* to the *subject matter involved in the action*, sufficient to

warrant the issuance of an Order compelling all of the deposition testimony sought, under Rules

26, 34, 37, and 45 of the Federal Rules of Civil Procedure.

  It is important to briefly review the general provisions governing discovery for civil suits

in the federal courts, as they are set forth in Rule 26.  Under Rule 26, parties may, *without* a court

order, obtain discovery of any matter, not privileged, that is relevant[36] to "the claim or defense of

---

[35]  *See also Surles v. Air France,* 00-CV-5004, 2001 U.S. Dist. LEXIS 15315, at *6 (S.D.N.Y. Sept. 27, 2001) ("In order to determine the significance or insignificance of portions of such material to the litigation, in camera examination may be appropriate.") [citations omitted]; *Montalvo v. Hutchinson,* 837 F. Supp. 576, 579 (S.D.N.Y. 1993) ("An appropriate solution to this dilemma . . . would be for plaintiff to request an in camera inspection to determine if the Grand Jury minutes contain material important to the prosecution of plaintiff's claim.") [citation omitted].

[36]  "Relevant" means "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  *See also Young v. Liberty Mut. Ins. Co.,* 96-CV-1189, 1999 WL 301688, at *2-3 (D. Conn. Feb. 16, 1999) (citing Rule 401 in defining Rule 26[b]); *B.C.F. Oil Refining Inc. v. Consolidated Edison Co.,* 168 F.R.D. 161, 164 (S.D.N.Y. 1996) (using Rule 401 to determine what is discoverable under Rule 26[b]); *Bogan v. Northwestern Mut. Life Ins. Co.,* 144 F.R.D. 51, 53 (S.D.N.Y. 1992) (using Rule 401 to

any party." Fed. R. Civ. P. 26(b)(1).  Moreover, parties may, *with* a court order, obtain discovery

of not just any matter that is relevant to "the claim or defense of any party" but any matter that is

relevant to "the subject matter involved in the action." *Id*.  In both circumstances, discovery

extends, not just to relevant evidence that is admissible at trial, but to relevant evidence that is

*inadmissible* at trial if that relevant evidence "appears reasonably calculated to lead to the

discovery of admissible evidence." *Id*.

However, this broad scope of permissible discovery set forth in Rule 26 is curtailed

somewhat by the requirement that a party moving to compel discovery of matter that is relevant

to "the subject matter involved in the action" must show "good cause." *Id*.[37]  On such a motion

to compel, "[t]he good cause standard is meant to be flexible, but the party seeking such

discovery should ordinarily be able to articulate a reason for believing it is warranted. . . .

Discovery will only be broadened [beyond that which focuses on the actual claims and defenses

of any party] when demanded by the reasonable needs of the action."  *Hill v. Motel 6*, 205 F.R.D.

490, 492 (S.D. Ohio 2001) (citation omitted), *accord*, 8 Wright & Miller, Federal Practice and

Procedure § 2008 (Supp. 2004), *accord*, Advisory Committee Notes to 2000 Amendments to

Fed. R. Civ. P. 26, *reprinted in* 192 F.R.D. at 389 (adding that "[t]he court may permit broader

discovery in a particular case depending on the circumstances of the case, the nature of the claims

_____

determine what is discoverable under Rule 26[b]).

[37]        *See RLS Associates, LLC v. United Bank of Kuwait, PLC*, No. 01 Civ. 1290, 2003
WL 1563330, *7 (S.D.N.Y. March 26, 2003) ("The amended rule gives the Court discretion to
order broader discovery, but only "[f]or good cause."); *Johnson Matthey, Inc. v. Research Corp.
et al.*, No. 01 Civ. 8115, 2002 WL 31235717, *2 (S.D.N.Y. Oct. 3, 2002) ("In order to compel
production of information which is relevant only to the subject matter of an action [as opposed to
the claim or defense of any party], the Rule requires that the party seeking discovery demonstrate
'good cause.'").

and defenses, and the scope of the discovery requested").[38]

This broad scope of permissible discovery is further curtailed by Rule 26(c), which permits motions for protective orders.  Specifically, "[u]pon motion by a party . . . and for good cause shown, the court . . . may make any order which justice requires to protect a party or person . . . including . . . [an order] that the disclosure or discovery not be had . . . ."  Fed. R. Civ. P. 26(c).  In a motion for a protective order, "good cause" is established only on a "specific" and "particular" showing of harm to the party opposing disclosure.  *See Alfadda, et al. v. Fenn, et al.*, 149 F.R.D. 28, 34 (S.D.N.Y. 1993) (citations omitted); *Cooper v. Welch Foods, Inc.*, 105 F.R.D. 4, 6 (W.D.N.Y. 1984) (citations omitted).  For example, where the party opposing disclosure argues that production would violate a statute, he must specify which provision of the statute applies and make a factual showing sufficient to establish that the provision protects the information sought.  *See Alfadda*, 149 F.R.D. at 34-36.  In determining whether good cause exists, the Court must keep in mind the public interest, and "strike a balance between plaintiffs' desire for full disclosure of relevant information against the defendant[s]' desire to preserve the privacy of its employees."  *Savitt v. Vacco, et al.*, No. 95-CV-1842, 1996 U.S. Dist. LEXIS 16875, *15-16 (N.D.N.Y. Nov. 8, 1996) (citation omitted).

Here, I construe Plaintiffs' papers as requesting an Order to compel the production of the information in question on the ground that it is relevant (not to one of Plaintiffs' claims in their

---

[38]     *See*, *e.g.*, *Rus, Inc. v. Bay Indus., Inc.*, No. 01 Civ. 6133, 2003 WL 174075, *14 (S.D.N.Y. Apr. 1, 2003) (good cause not shown in motion to compel discovery of material relevant only to subject matter of action where movant did not make "any showing of need"); *RLS Assoc., LLC v. United Bank of Kuwait, PLC*, No. 01 Civ. 1290, 2003 WL 1563330, *8 (S.D.N.Y. March 26, 2003) (good cause not shown in motion to compel discovery of material relevant only to subject matter of action where movant did not show that "production would serve the reasonable needs of the action").

Second Amended Complaint, or to one of Defendants' defenses but) to the subject matter

involved in the action for two reasons: (1) because the referenced "injury to prisoner"

investigations were part of the New York State Police's alleged "cover-up" of their improper

actions taken on May 18, 1997, information about how those investigations were directed and

conducted could lead to admissible evidence bearing on the reasonableness of Defendants'

actions on May 18, 1997; and (2) because the investigations "relate to injuries that certain

Plaintiffs received on May 18, 1997 at the hands of the troopers," the "information collected

pertaining to such injuries may be relevant to damages."  (Dkt. No. 428, Part 1, at 9.)

Furthermore, I construe Defendants' papers as opposing that request essentially on the ground

that Plaintiffs have failed to show good cause and/or on the ground that good cause exists for an

Order protecting the information from disclosure.

  The main problem with Plaintiffs' argument for the issuance of an Order compelling the

production of the information sought is the *speculative* nature of the asserted relevance of that

information.  Plaintiffs argue that the information about how the "injury to prisoner"

investigations were directed and conducted "could lead to admissible evidence bearing on . . . the

reasonableness of defendants' actions on May 18, 1997," and that the information sought "may

be" relevant to Plaintiffs' damages.  (Dkt. No. 428, Part 1, at 8, 9.)  As a district judge in the

Southern District of New York stated under analogous circumstances (in which a defendant

argued that information might be useful in its defense), "[I]nformation sought by a [party] does

not become relevant merely because [the party] speculates that it might reveal useful material."

*Surles v. Air France*, 00-CV-5004, 2001 U.S. Dist. LEXIS 15315, at *6 (S.D.N.Y. Sept. 27,

2001) [citations omitted].

Plaintiffs are correct that, on February 23, 2007, I indeed ruled that New York State Police Superintendent James W. McMahon (and various members of the New York State Police who participated in an internal investigation) "clearly could have" information that is relevant to the subject matter involved in the action. (Dkt. No. 423.)  However, the circumstances giving rise to that ruling appear to have been somewhat different than are the current circumstances in two respects.  First, as I understand it, the information that Plaintiffs previously sought regarded an internal investigation that focused on the specific issue of whether *New York State Troopers had committed misconduct* during the May 18, 1997 incident, not an internal investigation regarding the somewhat distinct issue of whether (or to what extent) *Plaintiffs had sustained injuries* during the May 18, 1997 incident.  (Dkt. No. 418, Part 1, at 2-15.)  Simply stated, the latter seems slightly more attenuated from the subject matter of the action than does the former. Second, when Plaintiffs made their previous application, they had not had the benefit of the deposition of Superintendent McMahon (as well as various other depositions), which they do now.  Simply stated, Plaintiffs' "need" for information that might support their "cover-up" theory has diminished somewhat during the past four months.  (As explained above, an assessment of whether a party has shown good cause for an order directing disclosure of certain information is a flexible and fluid one, involving consideration of "the reasonable needs of the action" and "the circumstances of the case.")

As a result, I make the following ruling regarding Plaintiffs' current request.  That request is denied without prejudice with regard to the eight New York State Police Investigators who conducted the "injury to prisoner" investigations in question.  However, that request is granted in part, and denied in part, with regard to Lt. Frank DeGennaro.  A *brief* (i.e., two-hour) deposition

33

of Lt. DeGennaro shall be permitted in the federal courthouse in Syracuse, at a date and time

when, upon the assertion of any objection based on privilege, I shall be available to hear the

proffered deposition testimony and promptly render a ruling on it.  My Courtroom Deputy, Mr.

Terry Mitchell, should be contacted (315-234-8613) to arrange an appropriate date, time and

room for the deposition.  <u>Moreover, at least one day prior to the deposition, defense counsel is</u>

<u>directed to provide me with copies of the documents referenced in footnote 3 of Judge Scullin's</u>

<u>Memorandum-Decision and Order of September 21, 2004, which Judge Sharpe apparently ruled</u>

<u>(on November 17, 2003) were protected by the deliberative process privilege, for my *in camera*</u>

<u>review in advance of the deposition</u>.  (Dkt. No. 318, at 8-9, n.3.)

IV.     **Request for an Order Permitting Plaintiffs to Conduct the Depositions of 32 Non-Party New York State Troopers Who Were Either Present at the May 18, 1997 Incident or Involved in Its Immediate Aftermath, and the Brief Depositions of the Approximately 58 Remaining Such New York State Troopers if Defendants Indicate an Intent to Rely on Information Obtained by Those Troopers**

Plaintiffs request an Order permitting them to conduct (1) the depositions of 32 non-party

New York State Troopers who were either present at the May 18, 1997 incident or involved in its

immediate aftermath, and (2) the brief depositions of some or all of the approximately 58

remaining such New York State Troopers in the event it becomes apparent that Defendants

intend, in a future motion or at trial, to rely on information obtained by those Troopers.  (Dkt.

No. 428, Part 1, at 9-10.)  Plaintiffs argue that each of the aforementioned 32 Troopers possesses

information relevant to the May 18, 1997 incident, for the reasons detailed in Exhibit E to their

motion papers.  (Dkt. No. 428, Part 6.)

Defendants oppose this request essentially on the ground that the requested depositions

would  violate Rules 30(a)(2)(A) and 26(b)(2)(C) of the Federal Rules of Civil Procedure in that

(1) they would be unreasonably cumulative or duplicative of previously conducted depositions, and/or (2) Plaintiffs have already had ample opportunity, in previously conducted depositions, to obtain the information sought.  (Dkt. No. 427, at 4.)  More specifically, Defendants argue that, as of April 4, 2007, Plaintiffs had already conducted at least 98 depositions in this case–including at least 41 depositions of parties and non-parties who were directly involved in the arrests of Plaintiffs during the incident in question on May 18, 1997, and at least 44 depositions of parties and non-parties who were present during, and observed, the incident in question on May 18, 1997.  (*Id.*)

In order to obtain leave to expand the ten-deposition limit imposed by Rule 30(a)(2)(A), it is the burden of the party seeking the additional depositions to show cause for the expansion, for example, by showing that (1) the proposed discovery is not "unreasonably cumulative or duplicative, or . . . obtainable from some other source that is more convenient, less burdensome, or less expensive," (2) the party seeking the proposed discovery has not previously "had ample opportunity by discovery in the action to obtain the information sought," and (3) that "the burden or expense of the proposed discovery [does not] outweigh[] its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."  *See* Fed. R. Civ. P. 30(a)(2)(A), 26(b)(2)(C).

Here, Plaintiffs largely have not made this showing.  Granted, Plaintiffs have submitted an exhibit wherein they attempt to specifically show why 32 of the proposed 90 depositions would yield information that is relevant to Plaintiffs' claims, Defendants' defenses, and/or the subject matter involved in the action.  (Dkt. No. 428, Part 1, at 9-10; Dkt. No. 428, Part 6.)

However, in that exhibit they often fail to squarely address the crux of Defendants' argument, which is that the proposed depositions would be unreasonably cumulative or duplicative of various of the approximately 98 previously conducted depositions in this action.[39]

Indeed, several of the proposed depositions seem duplicative of *one another*.  For example, some of the proposed depositions seek to obtain the observations by the deponents of "a woman . . . with a stroller" that contained an infant in "a body cast" who was allegedly knocked from the stroller (apparently Plaintiff Roberta Rockwell and her infant child, Plaintiff Odenhaida Rockwell).  (*See*, *e.g.*, Dkt. No. 428, Part 6, ¶¶ 3, 4, 5, 11, 32.)  Some of the proposed depositions seek the observations by the deponents of the treatment of a "a Channel 3 cameraman."  (*Id*. at ¶¶ 1, 3, 5, 6.)  Some of the proposed depositions seek to obtain the observations by the deponents of the arrest and alleged beating of Plaintiff Kenneth Kappelmeier.  (*Id*. at ¶¶ 2, 4, 7, 12, 14, 22.)  Some of the proposed depositions seek to obtain the observations by the deponents of the arrest and alleged beating of Plaintiff Robert E. Bucktooth, Jr. (other than the observations that are already evident from the videotape of his arrest).  (*Id*. at ¶¶ 10, 26, 30.)  Some of the proposed depositions seek to obtain the observations by the deponents of transportation of Plaintiffs Leighann Neff and Marissa Horton to SP Lafayette.  (*Id*. at ¶¶ 17, 18.)[40]

---

[39]     By contrast, an instance in which Plaintiffs *do* make this showing is Paragraph 19 of Exhibit E, wherein they explain that non-party Michael L. Downey "supervised approximately six other NYSP members who were part of [the] traffic control squad [that was part of the NYSP response to the May 18, 1997 gathering] . . . , none of whom [Plaintiffs] are seeking to depose. Plaintiffs have not yet previously deposed any member of the traffic control squad." (Dkt. No. 428, Part 6, ¶ 19.)

[40]     I note that other of the proposed depositions err in the opposite regard, seeking to obtain the observations by the deponents of unidentified (or at least unnamed) individuals.  (*Id*. at

Moreover, I note that, in addressing the burdens of proposed depositions, it is permissible

for a Court to consider the fact that the targets of the proposed discovery are nonparties (as is the

case here, where I note that, indeed, 13 of the 32 nonparty Troopers appear to be *retired* from the

New York State Police).[41]  *See Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y.

1988) ("Of significance . . ., in balancing the competing hardships [between disclosure and

nondisclosure of the discovery sought], is the Society's status as a nonparty to this litigation.

Under the authorities, this factor is significant in determining whether compliance with a

discovery demand would constitute an undue burden.") [internal quotation marks and citations

omitted], *aff'd*, 870 F.2d 642 (Fed. Cir. 1989); *S.E.C. Seahawk Deep Ocean Tech., Inc.*, 166

F.R.D. 268, 269 (D. Conn. 1996) ("The court may consider a movant's non-party status when

weighing the burdens imposed in connection with the subpoena at issue."); *Jack Frost Lab., Inc.*

*v. Physicians & Nurses Mfg. Corp.*, 92-CV-9264, 1994 WL 9690, at *2 (S.D.N.Y. Jan. 13, 1994)

("The most obvious burden is borne by the non-party witness, and we are instructed to be

particularly sensitive to any prejudice to non-litigants drawn against their will into the legal

disputes of others.") [citation omitted]; *In re Candor Diamond Corp.*, 26 B.R. 847, 849

(S.D.N.Y. 1983) ("Restrictions on discovery may be broader where a non-party is the target of

discovery to protect such third parties from unnecessary harassment, inconvenience, expense or

---

¶ 12 ["Trooper Brownsell was involved with an unidentified arrest"], ¶ 15 ["Trooper Parsons was involved with the arrest of a middle-aged man"], ¶ 16 ["Sergeant Raub handed an arrestee to a trooper"], ¶ 19 [Trooper Barker "escorted a male arrestee to a troop car"].)

[41]        (*Id.* at ¶¶ 5, 8, 11, 13, 14, 17, 18, 20, 24, 25, 30, 31, 32 [listing nonparty Troopers who are not currently members of the New York State Police].)

disclosure of confidential information.") [citations omitted].[42]

As a result, I make the following ruling regarding Plaintiffs' current request.  That request is denied without prejudice with regard to the approximately 58 nonparty New York State Troopers who were not specifically identified in Plaintiffs' motion papers.  However, that request is granted in part, and denied without prejudice in part, with regard to the 32 nonparty New York State Troopers who were specifically identified in Plaintiffs' motion papers.  Specifically, at this time, I will permit depositions of the following 19 nonparties: Arthur L. Broccoli; Robin L. Palmer; Robert W. Gardner; Jon E. Giddings; William J. Armstrong; Allen V. Svitak; Michael DiLorenzo; James Armstrong; Mark Williams; Gary L. Greene; Rodney Campbell; Dave R. Berry; Peter A. Kalin; Michael L. Downey; William M. Ambler; Mary A. Clark; Michael D. Grande; David J. Peters; and Mark W. Lovell.  (Dkt. No. 428, Part 6, ¶¶ 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 14, 17, 19, 20, 23, 26, 30, 31.)

However, counsel for Plaintiffs are directed to keep each of the depositions *brief* (i.e., under two hours) and to not seek to elicit testimony that is cumulative or duplicative of previous testimony adduced in this action.  Moreover, defense counsel is advised that, before the depositions, I will entertain a motion for a protective order with regard to some or all of this

---

[42]     *See also Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) ("Although Rule 26(b) applies equally to discovery of nonparties, the fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances.") [citations omitted]; *Dow Chem. Co. v. Allen*, 672 F.2d 1262, 1277 (7th Cir. 1982) ("[A] court may properly give account to the third-party status of those from whom production is sought in determining whether compliance would constitute an undue burden.") [citations omitted]; *Dart Indus. Co., Inc. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) ("While discovery is a valuable right and should not be unnecessarily restricted, . . . the 'necessary' restriction may be broader when a nonparty is the target of discovery. . . to protect third parties from harassment, inconvenience, or disclosure of confidential information.") [citations and internal quotation marks omitted].

deposition testimony upon a showing by Defendants that such testimony would be redundant of *specific* deposition testimony previously adduced in this action, should Defendants choose to file such a motion.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiffs' request for an Order either (1) permitting them to re-depose retired Senior Investigator Dennis J. Blythe for the limited purpose of discovering information regarding the identity and reliability of five confidential sources about whom he testified at his initial deposition, or (2) precluding Defendants from relying on the information provided by Investigator Blythe's confidential sources for the remainder of this lawsuit (Dkt. No. 428) be **DENIED without prejudice**; and it is further

**ORDERED** that Plaintiffs' request for an Order either (1) declaring that Martin J. Williams is a "proper" Defendant in Plaintiffs' Second Amended Complaint, or (2) permitting Plaintiffs to file a Third Amended Complaint naming Mr. Williams as a Defendant (Dkt. No. 428) be **DENIED**; and it is further

**ORDERED** that Plaintiffs' request for an Order permitting them to conduct the depositions of some or all of the eight non-party New York State Police Investigators (other than Lt. Frank DeGennaro) who conducted the above-referenced "injury to prisoner" investigation following the occurrence of the incident in question on May 18, 1997, in the event it becomes apparent that Defendants intend (in a future motion or at trial) to rely on information collected by those investigators (Dkt. No. 428), is **DENIED without prejudice**; and it is further

**ORDERED** that Plaintiffs' request for an Order permitting them to conduct the deposition of non-party Lt. Frank DeGennaro regarding the aforementioned "injury to prisoner"

investigation (Dkt. No. 428) is **<u>GRANTED in part and DENIED in part</u>, as described above in Part III of this Memorandum-Decision and Order**; and it is further

**ORDERED** that Plaintiffs' request for an Order permitting them to conduct the depositions of 32 non-party New York State Troopers who were either present at the May 18, 1997 incident or involved in its immediate aftermath (Dkt. No. 428) is **<u>GRANTED in part and DENIED without prejudice in part</u>, as described above in Part IV of this Memorandum-Decision and Order**; and it is further

**ORDERED** that Plaintiffs' request for an Order permitting them to conduct the brief depositions of some or all of the approximately 58 remaining New York State Troopers who were either present at the May 18, 1997 incident or involved in its immediate aftermath, in the event it becomes apparent that Defendants intend (in a future motion or at trial) to rely on information obtained by those Troopers (Dkt. No. 428), is **<u>DENIED</u> without prejudice**; and it is further

**RECOMMENDED** that Defendants' motion to dismiss Plaintiffs' claims against Defendant Williams (Dkt. Nos. 427, 416) be **<u>GRANTED</u>** for the reasons set forth above in Part II.A. of this Memorandum-Decision and Order.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing Report-Recommendation.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: July 11, 2007
      Syracuse, New York


George H. Lowe
United States Magistrate Judge